## Sun Oil Company, Appellant, *v.* Zoning Board of Adjustment.

Argued January 11, 1961.   Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Clair V. Duff,* with him *Robert A. Doyle,* and *Duff & Doyle,* for appellant.

*Frederick A. Boehm,* Assistant City Solicitor, with him *David Stahl,* City Solicitor, for zoning board of adjustment, appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, March 23, 1961:

Sun Oil Company (Sun) is the equitable owner of a tract of land located at the corner of Saw Mill Run Boulevard and Edgebrook Avenue in Pittsburgh. This tract extends 151 feet along the northerly side of Saw Mill Run Boulevard and 50 feet along the westerly side of Edgebrook Avenue and is within a district zoned as an "M-1" Limited Industrial District wherein an automobile and gasoline service station is a permissive use.[1] Saw Mill Run Boulevard, a four-lane highway, is a major traffic approach to downtown Pittsburgh and bears very heavy vehicular traffic.

Proposing to use this land as the site of an automobile and gasoline service station, on June 3, 1959 Sun submitted a "site plan application" to the Department of City Planning of Pittsburgh and, on July 17, 1959, Sun was notified that its application had been disapproved because the proposed distance be-

---

[1] Section 2004-3, Pittsburgh Zoning Ordinance No. 192, enacted May 10, 1958.

tween vehicular "access points on the land" represented too great a departure from the requirements of section 2401-6, article 24 of the zoning ordinance which provides, inter alia, that "vehicular access points shall be limited, where possible, to intervals of not less than three hundred (300) feet when on a *major traffic thorofare.*"

On August 28, 1959, Sun applied to the Superintendent of Building Inspection for a building and occupancy permit which application was denied because the "site plan application" had been disapproved. On August 31, 1959 Sun appealed to the board of adjustment (board). After a hearing, the board upheld the denial of the permit and from that decision Sun appealed to the County Court of Allegheny County which on March 26, 1960 remanded the matter to the board for the taking of further testimony. After taking additional testimony, the board again upheld the denial of this permit and, without taking any further testimony, the County Court of Allegheny County entered an order which sustained the board's decision and dismissed Sun's appeal. From that order this appeal has been taken.

Sun contends both that section 2401-6, article 24, of the zoning ordinance is unconstitutional and that the board abused its discretion in the denial of a permit.

Section 2401-6 of the ordinance requires that applicants must submit to the Planning Commission a "site plan" upon which must be shown, inter alia, "the location of vehicular access onto the site". The focal point of Sun's attack is the second paragraph of section 2401-6 which provides: "In considering any site plan hereunder, the *Commission* shall endeavor to assure safety and convenience of traffic movement, both within the site covered and in relation to access *streets,* and harmonious and beneficial relationship of

2

*structures* and uses on the site as well as contiguous
properties. In so doing, vehicular access points shall
be limited, where possible, to intervals of not less
than three hundred (300) feet when on a *major traf-
fic thorofare*".

Sun attacks the constitutionality of this provision
upon two grounds: *subjectively,* in that the require-
ment of a 300 foot distance between "access points"
bears no reasonable relationship either to the safety
or to the general welfare of the public and; *objectively,*
in that the provision is vague, indefinite and capri-
cious.

To be valid a provision in a zoning ordinance must
bear a reasonable relationship to the protection of the
health, safety, morals or general welfare of the pub-
lic: *Best v. Zoning Board of Adjustment,* 393 Pa. 106,
112, 141 A. 2d 606. That this particular provision of the
ordinance which requires a 300 foot distance between
"access points" of a site located upon an admittedly
major traffic thoroughfare bears a direct and reasona-
ble relationship to the safety and general welfare of the
public travelling upon this particular vehicular ar-
tery is beyond question. As Judge Beck well stated
in the court below: "Saw Mill Run Boulevard is a
major public highway carrying a heavy volume of mo-
tor vehicular traffic and the parties to this case treat-
ed the problem involved as of necessity requiring some
type of reasonable regulation in the interest of public
safety and the general welfare. . . . [Sun's] real com-
plaint is that the requirement in the ordinance of a
frontage of approximately 300 feet between access
points on major traffic thoroughfares, as applied by the
City Planning Commission to gasoline service stations,
is economically not feasible because . . . [Sun] would
be required to make a larger investment in land than
its business would justify, and thus . . . [Sun] would
be at a competitive disadvantage with other gasoline

station operators. This position, if adopted, would negative any effort by municipal action to meet and solve safety and general welfare problems as they arise and plan for the future in urban areas. . . .

"In its zoning ordinance the City of Pittsburgh has undertaken to regulate vehicular access points of ingress and egress with respect to property abutting major traffic thoroughfares for the purpose of assuring safety and convenience of traffic movement. Maintaining the continuous flow of traffic without undue delays is a proper concern in promoting safety and serving the general welfare in the use of public highways. The layout and design of gasoline service station access points, including the distance between the point where a motor vehicle enters a station, and where, after being serviced, leaves the station, is substantially related to preserving and promoting safety on major traffic thoroughfares. Adequate distance between access points tends to avoid the likelihood of congestion on the station driveways, and to prevent situations where vehicles waiting to enter protrude into the highway traffic lanes. Such regulations contribute to maintaining a continuous flow of traffic and the avoidance of the collision of motor vehicles on the highways, and are neither unreasonable nor arbitrary and are within the legitimate purposes of the police power." Sun's claims of invalidity of this provision in this respect is without merit.

Sun next urges that the provisions of the ordinance are vague, indefinite and capricious. If a legislative enactment is vague and indefinite so that courts are unable to determine with any reasonable degree of certainty the intent of the legislative body or so incomplete, conflicting and inconsistent in its provisions that it cannot be executed, such enactment will be deemed invalid: *Willcox v. Penn Mutual Life Ins. Co.,* 357 Pa. 581, 595, 55 A. 2d 521; *Panther Valley Tele-*

*vision Company v. Summit Hill Borough,* 376 Pa. 375, 378, 102 A. 2d 699. An examination of this provision of the ordinance leaves no doubt as to the legislative intent, i.e., the protection of the safety and general welfare of the public using Saw Mill Run Boulevard. Sun claims that the phrase "vehicular access points" is vague and that "access points" mean either vehicular *entrances* to or vehicular *exits* from a major traffic thoroughfare but that they cannot mean both. With this we disagree. "Access is . . . the right which an abutting owner has of ingress to and egress from his premises . . ." Black's Law Dictionary (4th ed.) p. 28. As employed in this ordinance, it is clear that "access points" clearly mean both the approach *from* the land *to* the major traffic artery and the approach *from* the major traffic thoroughfare *to* the land.

Sun next argues that the manner of measurement between the "access points"[2] is likewise vague. Sun, however, is in nowise harmed by the manner of measurement because even if the measurement was made between the *outside* points of the approaches—the points most favorable to Sun—Sun would still be 140 feet short of the 300 foot requirement.

Sun then urges that section 2401-6 creates an unlawful delegation of legislative power. Section 106 of the ordinance sets forth its general purpose and intent: ". . . The provisions of the ordinance shall be held to be the minimum requirements for the protection of the health and safety and welfare of the people at large . . ." In *Archbishop O'Hara's Appeal,* 389 Pa. 35, 50, 131 A. 2d 587, we upheld an ordinance containing almost identical language stating that it "provide[d] sufficient appropriate conditions and safeguards controlling the board's discretion to render valid

---

[2] The evidence is that generally such distance is measured from the center point of each of the access areas.

the ordinance. [citing cases]" In the present ordinance, over and above the general purposes of the ordinance embodied in Section 106, the provision under attack provides that in considering a "site plan", ". . . the *Commission* shall endeavor to assure safety and convenience of traffic movement, both within the site covered and in relationship to access streets, and harmonious and beneficial relationship of *structures* and uses on the site as well as contiguous properties . . ." The legislative body—the Council of the City of Pittsburgh—both in Section 106 and Section 2401-6 has prescribed standards to control the determinations of the Commission which are adequate and sufficient. The ordinance does not constitute an unlawful delegation of legislative power.

Lastly, Sun urges that the board abused its discretion. We have carefully examined this entire record and we are satisfied that the board's conclusion that a building permit be denied Sun was arrived at without caprice and upon the basis of testimony which indicated that to permit use of this land under the circumstances as an automobile and gasoline service station would result in a hazard and danger to the public travelling on Saw Mill Run Boulevard.

Absent a commission of errors of law or an abuse of discretion, we must uphold the board's decision.

Order affirmed. Costs on Sun.