Rieder Appeal.

Argued January 17, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Lawrence A. Brown,* with him *Duffy, McTighe and McElhone,* for intervenor, appellant.

*Samuel H. High, Jr.,* with him *High, Swartz, Roberts & Seidel,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, March 19, 1963:

This is an appeal from the reversal by the Court of Common Pleas of Montgomery County of an order of the Board of Adjustment of the Borough of Norristown [Board], which granted a special exception permitting construction of an addition to a nursing home.

Appellant acquired the property, located in an "A" residential area, in 1954.[1] It consists of a three story stone structure, 84 by 37 feet,[2] and has been operated as a nursing home since 1946. The building has a licensed capacity for 32 patients, and, ordinarily, some patients are housed on the third floor.[3] It is proposed to erect a one story addition, 45 feet wide and 60 feet long, to be connected to the present home by a passageway 20 feet long. The addition will contain housing for 20 patients, baths, nursing station, storage area, waiting room and fire escapes. Both structures will be able to accommodate a total of 45 patients.[4] The cost of the proposed addition is approximately $60,000.

---

[1] The Zoning Ordinance was enacted Sept. 5, 1933.

[2] On the first floor are a kitchen and seven rooms, eight rooms and two baths on the second floor, and six rooms and two baths on the third floor.

[3] In 1957, there was a fire in the building, and some difficulty was experienced in evacuating the third floor patients. The Commonwealth has not required that all patients be removed from the third floor. However, the Board, in granting the special exception, directed that the third floor shall not be used for patients after the construction of the new building.

[4] Suitable arrangements for needed additional parking facilities have been made.

Immediately to the east of appellant's property is a rather large food market with parking lot in the rear. Across the street is a hotel, and, nearby, is another large food market and a group of residential buildings.

Appellee (protestant before the Board) is the owner of the property immediately adjoining the nursing home to the west. This property has been used as a single dwelling house, although presently it is unoccupied (and apparently has been vacant since 1958). This building and the nursing home retain the external appearance of large, older, single dwelling houses.

The proceeding before the court below was based entirely upon the record established before the Board. The test to be applied by this Court, therefore, is whether the Board clearly abused its discretion or committed an error of law: *Brennan v. Zoning Board of Adjustment*, 409 Pa. 376, 187 A. 2d 180 (1963).

A special exception in a zoning ordinance has been defined as ". . . one allowable where facts and conditions detailed in the ordinance, as those upon which an exception may be permitted, are found to exist." *Phi Lambda Theta Zoning Case*, 400 Pa. 60, 161 A. 2d 144 (1960) ; *Kotzin v. Plymouth Township Zoning Board of Adjustment*, 395 Pa. 125, 149 A. 2d 116 (1959) ; *Devereaux Foundation, Inc., Zoning Case*, 351 Pa. 478, 483, 41 A. 2d 744, 746 (1945).

Section 6 of the ordinance provides that in an "A" residential district, "land may be used and buildings or structures may be erected, altered or used, only for . . . 4. Homes,[5] hospitals, sanitariums, when authorized as a special exception by the Board of Adjustment, in accordance with Section 44 (e)." The ordinance as printed, however, contains no Section 44 (e) ; section

---

[5] Home is defined in the ordinance as "An establishment whose principal object is to shelter or care for the needy, afflicted or aged persons."

44 has 5 subsections, numbered 1 through 5, and subsection 5 is followed by 19 sub-subsections lettered "A" through "S". Section 44, as it appears in the ordinance book, contains 5 subsections lettered (a) through (e), and (e) is followed by 19 sub-subsections numbered 1 through 19. While we recognize the difficulties presented by these discrepancies, it is not, however, essential to our present determination to ascertain the precise labelling designations of the paragraphs and subdivisions of Section 44.

The fifth subparagraph (following the fifth paragraph of Section 44) empowers the Board to authorize a permit: "For a reasonable enlargement of a structure existing at the time of the passage of this Ordinance and used for trade, business or industry, . . . or for reasonably necessary additional structures for any such use, upon the same lot or plot of ground as that upon which such existing structure and use obtain." The lower court construed this language as setting forth the exclusive criteria governing the grant of a special exception and held that since the property in question was not used as a nursing home when the ordinance was enacted, it did not qualify for a special exception. We do not agree that the ordinance limits the grant of a special exception to the facts and conditions recited in this portion of the ordinance. The lower court's exclusive reliance on the precise language of this subparagraph overlooks the significance of the broad introductory directive that: "In the exercise of this power, the Board *may, among other variances, modifications and interpretations, authorize a permit to be issued,*" for the uses recited in the 19 succeeding subparagraphs. (Emphasis supplied.) This language clearly indicates that the illustrated uses are not the only ones permitted. We find nothing in the ordinance itself which restricts the Board's authority to the instances detailed; hence there is no basis for imposing

such limitation upon the discretionary powers entrusted to it. This view of the Board's authority is in accord with the earlier portion of the paragraph which provides: "Where, by reason of topographical conditions, . . . or because of other exceptional circumstances, the strict application of any provision of this Ordinance would result in exceptional practical difficulty or undue hardship upon the owner of any specific property, *the Board,* in passing upon appeals, *shall have the power to vary or modify such strict application* or to interpret the meaning of this Ordinance so as to relieve such difficulty or hardship; provided that such variance modification or interpretation shall remain *in harmony with the general purpose and intent of this Ordinance,* so that the health, safety, morals and general welfare of the community shall be conserved and substantial justice done." (Emphasis supplied.)

The above and other portions of Section 44 provide basic standards and appropriate conditions for the guidance of the Board in the performance of its duties. See *Archbishop O'Hara's Appeal,* 389 Pa. 35, 131 A. 2d 587 (1957).

Appellee vigorously urges that even assuming there is authority for the issuance of the special exception requested, such grant is not warranted by the facts and is not in conformity with the purpose and intent of the ordinance. Our review of the record fails to reveal support for this position. Appellee's final contention, that permitting the new construction will change the character of the immediate area, is likewise without merit, particularly in view of the Board's finding that the "contemplated use of the property will not adversely affect the character of the neighborhood."

We have examined the whole record in the light of the applicable provisions of the zoning ordinance, and we are entirely persuaded that the Board acted within

its authority and properly applied the mandated standards in granting the special exception. The action of the Board is in harmony with the zoning objectives of the ordinance and is without abuse of discretion or error of law. It should not be disturbed.

Order reversed.