## Davis Application

*Wisler, Pearlstine, Talone & Gerber*, for appellants.

FORREST, P. J., June 20, 1966.—This case comes before the court upon the second appeal of Robert J. Davis and Morton Check from the refusal of the Upper

Merion Board of Adjustment to grant a variance or special exception to build a car wash. The property is zoned C-1, a commercial classification, which does not include the operation of a car wash as an enumerated use.

The ground in question is located on the west side of DeKalb Pike, Route 202, in Upper Merion Township, just south of the Pennsylvania Turnpike. The property, flanked by gasoline stations on either side, has a frontage of 164 feet on DeKalb Pike, a four lane highway (two lanes in each direction divided by a concrete medial barrier), which is the main north-south artery through the township. The road is heavily traveled, being extensively used by commercial and passenger vehicles for local and through traffic.

The lot consists of a long channel of ground running parallel to the Pennsylvania Turnpike for a distance of 563 feet on the north. The lot is approximately 150 feet wide with the greater frontage due to the angle at which DeKalb Pike intersects the tract. Although the tract consists of 1.89 acres, only 1.29 acres are available for use because one-third of the tract, immediately adjacent to the turnpike, is in the nature of a gully or drainage ditch.

On February 18, 1964, petitioners filed an application with the appropriate township official for a building permit to construct a car wash on the above mentioned tract. This application was denied, and petitioners filed an appeal to the board of adjustment. A hearing was held on March 17, 1964, and on April 30, 1964, the board rendered its decision denying both the appeal for a variance and the application for a special exception. The board's decision was appealed to this court (no. 64-5811), which affirmed the board in an opinion by Judge Honeyman dated February 26, 1965. No appeal was taken from this decision. Thereafter, on March 31, 1965, petitioners again applied to the zon-

ing board for a variance to use the property as a car wash. A hearing was held on this second application on April 23, 1965, and on July 7, 1965, the board rendered its decision, again denying the variance. No appeal was taken therefrom. One week later, on July 14, 1965, applicants for the third time presented an application to the board requesting a variance and a special exception. A hearing was held on September 15, 1965, and the board's opinion denying the application was handed down on October 15, 1965. This third denial by the board is the basis for the present appeal, which, after oral arguments before the court en banc, is now before the court for disposition.

Since this court took no additional testimony, the scope of our review is confined to an examination of the record to determine whether the board was guilty of a manifest abuse of discretion or an error of law: Jacobi v. Zoning Board of Adjustment, 413 Pa. 286 (1964).

In considering petitioners' request for a special exception, the issue before this court is whether the board of adjustment erred as a matter of law in denying the exception. A special exception has been defined by the Supreme Court of Pennsylvania as " '. . . one allowable where facts and conditions detailed in the ordinance, as those upon which an exception may be permitted, are found to exist' ": Rieder Appeal, 410 Pa. 420, 422 (1963).

The basis of petitioners' requested exception was that section 1000F permits a municipal or commercial parking garage use in a C-1 district, and that section 200, defining "garage, public", allows the service of motor vehicles; thus, in conjunction with subparagraph J of section 1000, permitting uses of the same general character as a special exception, the car wash use would be of the same general character.

In rejecting petitioners' argument, the board relied

upon the distinction that the ordinance draws between "garage, public" and "garage, storage". Section 200 of the zoning ordinance states that a storage garage is "a building, not a public garage . . . used solely for the storage of motor vehicles, but not for the service . . . thereof . . ." The board found therefrom that a parking garage and a storage garage are the same. Thus, the board concluded: "By definition, the servicing of motor vehicles, which would encompass car washing, is not permitted in a storage garage and thus not permitted in a parking garage. Since servicing is thus specifically excluded, there is no permitted use which would be the basis for a special exception as set forth in Section 1000J. Thus, the grant of a special exception is denied".

The aforementioned argument of petitioners has previously been presented to and rejected by this court. Judge Honeyman's opinion denying petitioners' first appeal to this court rests in part upon Judge Ditter's opinion in Gelber v. Upper Merion Township, 85 Montg. 99 (1965), concerning a tract of land directly across from petitioner's tract. Therein, the court stated, at page 102:

"The ordinance does not define a 'commercial parking garage,' but since it is a permitted use in a commercial district, it would seem intended as a place for the temporary storage of vehicles whose owners are shopping or using other facilities nearby. It contemplates an in and out flow but the service rendered is one of retention. A parking garage never exists by itself, but in conjunction with other uses. A car wash, on the other hand, is not dependent on nearby stores or theatres. The object of going to a parking garage is not to leave as quickly as possible, but to have a safe place for auto storage while other activities are pursued. The object at a car wash, on the other hand, is speedy service—a constant receipt and ejection of

cars with as little time consumed as possible". The court finds no error by the board of adjustment in denying the requested special exception.

The second issue to be resolved by this court is whether the zoning board abused its discretion in denying the variance requested by petitioners. It is well settled that a variance is to be sparingly granted and only under peculiar and exceptional circumstances, and that the one seeking the variance has the burden, and a heavy burden, of proving the property involved is subject to an unnecessary hardship unique or peculiar to itself and that the variance will not be contrary to the public interest: McClure Appeal, 415 Pa. 285 (1964); Lovering v. Zoning Board of Adjustment, 406 Pa. 339 (1962).

The testimony and exhibits produced by petitioners have been extensive. They have offered expert testimony in the areas of traffic, city planning, car washes and real estate in the township. The testimony indicated that the site can accommodate 55 cars waiting to enter the wash building and a total of at least 70 to 85 cars waiting, being washed and dried. Petitioners have attempted to deal with the problems of ingress and egress by offering to pave a 310 feet deacceleration lane and by planning an arc curve exit to swing cars into traffic, such plans being approved by the Pennsylvania Highway Department. Concerning hardship, petitioners offered testimony on the peculiar characteristics of the tract, which make it particularly adaptable to the proposed use and on its non-suitability for the permitted uses.

At this point, the court feels compelled to state that it would probably have reached a decision contrary to that of the board; however, our judgment cannot be substituted unless the board has clearly abused its discretion.

The testimony and exhibits from the hearings held

on April 23 and September 15, 1965, compose the record before this court, with the board's opinion of July 7, 1965, essentially setting forth the basis for its decision. The board found that the placement of a car wash between two gas stations on a heavily traveled high-speed highway was fraught with problems of hazardous ingress and egress and, as such, contrary to the public interest. With regard to the aforementioned deacceleration lane, the board acknowledged its merit, but believed it would create new hazards. Specifically, a car swinging into the deacceleration lane would pass closer to the entrance and exit of the Amoco station than it would if it had remained on the highway; also, the board noted that the highway department's approval did not indicate that the hazardous conditions would be alleviated thereby. Concerning the hazards of egress, and despite petitioners' proposed arc curve, the board found the exit, being five to six feet from the adjacent property to the south, whose entrance is almost immediately at that point, created an irremediable problem. As the board stated on pages 3 and 4 of its opinion:

". . . there would be cars exiting from the car wash immediately into the path of cars beginning to turn into the gas station which the Board believes is a dangerous condition. This problem would be aggravated where a vehicle intending to enter the gas station would travel in the deacceleration lane and pass immediately in front of the exit to the car wash".

Concerning hardship, the board felt that all permitted uses were not conclusively ruled out by factors other than economic.

Upon carefully reviewing the entire record before us, we cannot say that the board has abused its discretion. The fact that the zoning ordinance prevents property from being used for its most valuable and economic use is not a sufficient basis for the granting of a vari-

ance: Edwards Zoning Case, 392 Pa. 188 (1958). The property is located in the vicinity of a very large shopping center, and the factors considered by the board are valid under the law. The arrangement of points of access and exit upon a major traffic thoroughfare bears a direct and reasonable relationship to the safety and general welfare of the public traveling upon this particular highway: Sun Oil Company v. Zoning Board of Adjustment, 403 Pa. 409 (1961) Economic hardship alone is insufficient to warrant the granting of a variance: Dishler v. Zoning Board of Adjustment, 414 Pa. 244 (1964), and , as the board stated in its opinion, all permitted uses have not been conclusively excluded.

And now, June 20, 1966, the decision of the board of adjustment is affirmed.