## Jackson v. Lower Gwynedd Township Zoning Board of Adjustment

*J. Bradley Taylor, Taylor & Hardwick,* for appellants.

*John P. Knox, Foulke, Knight, Stefan & Timoney,* for appellees.

*Wallace A. Murray, Wisler, Pearlstine, Talone & Gerber,* for intervenors.

HONEYMAN, J., June 26, 1968.—Intervenors, Arthur E. Benning and his wife Barbara-Lee Benning, breeders of English springer spaniels, applied to the

administrative officer of the Lower Gwnyedd Township Zoning Commission for permission to use part of their premises as a kennel for the boarding and breeding of dogs. Noting that this use was not expressly permitted on a premises situated in an "A" residential zoning district, said official referred the matter to the Zoning Board of Adjustment of Lower Gwynedd Township (hereinafter called board) for its determination. After holding a hearing on the matter and considering the relevant testimony, the board, by order dated October 2, 1967, granted intervenors a special exception to "maintain a dog boarding kennel and facilities for the breeding of springer spaniels", subject to certain enumerated limitations. It is from this order that the protesting neighbors (hereinafter called petitioners) have appealed to this court. In taking their appeal, petitioners allege that the decision and order handed down by the board concerning this matter was arbitrary, capricious and an abuse of discretion, and otherwise not in accordance with the law. This court granted petitioners' petition for a writ of certiorari by order dated October 27, 1967, and directed the board to certify to this court the entire record concerning this matter. No additional testimony having been taken by this court, this appeal shall be determined solely on the record that has been developed before the board.

A thorough review of this record reveals the following facts:

Mr. and Mrs. Benning (hereinafter called intervenors) are the equitable owners of the subject premises, having purchased same from G. Lupton Broomell and his wife.* Mr. Broomell, it may be noted, is chair-

---

* Intervenors have since become record owners of the subject property, November 29, 1967.

man of the board, and because of his interest in the

property, disqualified himself from the consideration of this case.

The activities proposed by the intervenors were to take place on a 12-acre tract of irregular dimensions. The property has a frontage of approximately 500 feet on the easterly side of the Bethlehem Pike in Springhouse, Pa., an area zoned "A" residential district. There are situated on the property a large colonial style dwelling house, a barn and several smaller out-buildings. It is the intention of the intervenors to use the barn for the "isolation" of dogs that are to be shown and to treat sick dogs. Two of the out buildings are to be used as kennels. Enclosed "runs" are to be constructed around these kennels for the exercise of their occupants. The total area to be used for the dog "business" can be calculated to be approximately one quarter of an acre. The intervenors propose to raise and breed their own dogs for sale and show purposes, and in addition to board the dogs of others for a fee. Although the number of boarding dogs has been limited by the board to 50 adult dogs, the intervenors are presumably entitled to breed as many dogs as they wish and to keep as many dogs as they wish on the property for breeding purposes. Further, even though the type of dogs the intervenors have been permitted to breed has been described as relatively quiet and gentle, there has been no restriction placed on the type of dogs that can be boarded on the premises. The management of this enterprise is to be in the hands of the intervenors as well as a full time kennelmaster.

In the case at bar no further testimony was taken by this court. Therefore, the scope of our inquiry shall be limited to the issues of whether the board committed either a manifest abuse of discretion or an error of law in granting the intervenors a special exception: Gross v. Zoning Board of Adjustment, 424 Pa. 603 (1967); Upper Providence Township

Appeal, 407 Pa. 20 (1962) ; Rieder Appeal, 410 Pa. 420 (1963).

A special exception in a zoning ordinance has been defined as ". . . one allowable where facts and conditions detailed in the ordinance, as those upon which an exception may be permitted, are found to exist": Rieder Appeal, 410 Pa. 420 (1963), page 422, and cases cited.

Section 301 of article III of the Lower Gwynedd Township Zoning Ordinance provides, in effect, that any use which is similar in nature to those accessory uses listed in section 300 of the ordinance is permissible when authorized as a special exception by the board. Section 300 of the Lower Gwynedd Township Zoning Ordinance provides as follows:

"A building may be erected, altered or used, and a lot or premises may be used, for any of the following purposes and for no other: a. Single family detached dwelling. (b, c, and d. of the ordinance are of no concern here.) e. Accessory use on the same lot with and customarily incidental to any of the above permitted uses. Accessory use shall be understood to include the professional office or studio of a doctor, dentist, veterinarian, masseur, teacher, artist, architect, engineer, draftsman, musician, lawyer, magistrate, also rooms used for home occupations, including dressmaking, millinery, laundry or similar handicrafts; provided the office, studio or occupational room is located in a dwelling in which the practitioner resides or in a building accessory thereto".

The import of these sections is to limit the scope of the board's power to grant a special exception for accessory uses to those uses which are similar to accessory uses which are "customarily incidental" to the primary use of a premises as a single family detached dwelling. These accessory uses are to include certain enumerated professional and home occupational uses.

In the case at bar, the facts indicate that the intervenors intend to operate a sophisticated and rather large dog business which shall encompass a barn, two out-buildings and extensive dog runs, in addition to the employment of a full time kennelmaster. Their facilities are to include 4 isolation rooms and a treatment room and although the maximum capacity of boarding dogs has been set at 50, the intervenors are at liberty to lodge their own dogs, plus those being kept for breeding purposes, plus the puppies that are being bred. Through no stretch of the imagination can a venture of this magnitude be considered as a use "customarily incidental" to the use of a residential dwelling as stipulated in section 300 (e) of the zoning ordinance.

Neither could such an enterprise be considered as a "home occupation". A "home occupation" has been defined by the Supreme Court of Pennsylvania as a use which is both incidental to the use of a property as a home and customarily conducted in a dwelling: Boreth v. Philadelphia Zoning Board of Adjustment, 396 Pa. 82 (1959). Even if the instant use were to be considered as incidental to the use of their property as a home, dog breeding and boarding on the scale contemplated by the intervenors is not customarily conducted in or about a dwelling. It must be borne in mind that in determining what is a customarily incidental use we must consider not only the kind but the degree of use.

As for the argument that the boarding and breeding of dogs is so similar to the operations of a veterinarian's office so as to bring it within the purview of the statutory requirements, we are constrained to hold that this contention has no merit.

In including the office of a veterinarian as an allowable accessory use, the drafters of the ordinance obviously and explicitly contemplated activities of a

professional nature. The business of the intervenors is purely and simply a commercial venture as opposed to the practice of veterinary medicine by a licensed veterinarian as an adjunct to his primary use of the premises as his residence. Clearly, a veterinarian is no more required to operate a dog and cat hospital or an animal boarding school in the pursuit of his profession than is a medical doctor required to operate a hospital, sanatorium or nursing home.

Therefore, we conclude that the board committed a manifest abuse of discretion in granting to the intervenors a special exception for such an accessory use under the circumstances of this case. The board must be reversed.

ORDER

And now, June 26, 1968, after argument before the the court en banc, the decision of the Zoning Board of Adjustment of Lower Gwynedd Township is reversed.