**Department of Banking Regulatory Powers**

KANE, Attorney General, YAKOWICZ, Solicitor General, and COKIN, Deputy Attorney General, December 27, 1976—You have requested our advice concerning whether savings banks operating under the Banking Code of 1965, Act of November 30, 1965, P.L. 847 (No. 356), 7 P.S. §101 et seq., may offer depositors a type of account, referred to generally as a NOW account, which, heretofore, has not been offered in Pennsylvania. Although this type of account, described in detail below, is a departure from traditional savings bank practice in Pennsylvania, it is our opinion, and you are accordingly advised, that you have the regulatory authority to permit NOW accounts.

A NOW account is a noninterest bearing account covered by monthly statements issued by the bank to the depositor. Under the terms of this account, money may be withdrawn by means of a negotiable order of withdrawal which will require the bank to pay the specified sum to a named third party. It is a "payable through" draft which will name a local commercial bank and will clear through the banking system much the same as other drafts. The NOW account is quite similar to a traditional checking account and, therefore, the question of whether savings banks may issue this type of account is of considerable importance to the banking community.

"Savings bank" is defined by the Banking Code of 1965 as:

". . . A corporation without capital stock which exists under the laws of this Commonwealth and as a savings bank under the Banking Code of 1933 was authorized to engage in the business of receiving savings deposits on the effective date of

this act or which receives authority to engage in such business pursuant to this act." 7 P.S. §102(x).

Since savings banks may quite clearly act as depositories, they must also have a means by which depositors may withdraw their funds. We do note that the term "savings deposits" is not defined in the Banking Code. The Banking Code provides, in pertinent part:

"A savings bank may receive money for deposit and:

"(a) Provisions for withdrawal — May provide by its articles or by-laws for the terms of withdrawal thereof except that deposits may not be accepted which are legally subject to withdrawal within a period of less than 14 days,

"(b) Notice in absence of provisions — Shall repay deposits on demand after sixty days' notice in the absence of any requirement of notice in its articles, by-laws or rules or in the event of failure by the savings bank to give any notice required by this act or by its articles, by-laws or rules. . . ." 7 P.S. §503(a), (b).

The provisions of law quoted above are the only provisions in the Banking Code of 1965 which discuss the means of withdrawing funds deposited in savings banks. There is nothing in those provisions which would prohibit a NOW account. This conclusion, however, does not end our inquiry, for there still remains the question of whether there is anything in the law which permits a NOW account. On this question, it is our opinion that the Secretary of Banking has the broad regulatory authority and power to permit such an account in his discretion, by appropriate regulations.

The following extensive quotes from the Banking Code of 1965 ineluctably lead to this conclusion:

"§103. Declaration of purposes; standards for exercise of power and discretion by department

"(a) Purposes of the act—The General Assembly declares as its purposes in adopting this act to provide for:

"...

"(v) The *opportunity for institutions subject to this act to remain competitive* with each other, with financial organizations existing under other laws of this Commonwealth, and with banking and financial organizations existing under the laws of other states, the United States and foreign countries,

"(vi) The *opportunity for institutions subject to this act to serve effectively the convenience and needs* of their depositors, borrowers and other customers, to participate in and promote the economic progress of Pennsylvania and the United States and to improve and expand their services and facilities for those purposes,

"(vii) The opportunity for the management of institutions to exercise their business judgment, subject to the provisions of this act, in conducting the affairs of their institutions, to the extent compatible with, and subject to, the purposes recited in the preceding clauses of this subsection (a),

"(viii) A *delegation to the department of adequate rule-making power and administrative discretion,* subject to the provisions of this act and to the purposes stated in this subsection (a), in order that the supervision and *regulation of institutions subject to this act may be flexible*

*and readily responsive to changes in economic conditions and to changes in banking* and fiduciary *practices,* and

". . .

"(b) Standards to be observed by department— The purposes of this act stated in subsection (a) of this section shall constitute standards to be observed by the department in the exercise of its discretionary powers under this act, in the promulgation of rules and regulations, in the examination and supervision of institutions subject to this act and in all matters of construction and application of this act required for any determination or action of the department.

"Comment—Banking Law Commission

". . .

"Clauses (v) through (ix) of subsection (a) *recognize* that after satisfying the imperatives of safety and soundness *there still remains a broad area in which the policies for banking legislation and regulation may create a progressive rather than restrictive atmosphere.* The *premises underlying such policies* recognized by this act are that contemporary banking faces, and should have the opportunity fairly to meet, a high degree of competition not only from other banks but also, in virtually all principal functions, from a large number and variety of other financial organizations; that *banking should have the leeway to adapt itself to changing and expanding requirements of the community* in order that it may make its proper contribution to economic progress; that, within the confines of appropriate restrictions to protect depositors and the public, the *private business judgment of management*

*should be free to guide the development of banking institutions;* and that banking legislation should not be overly-detailed but *should permit supervisory authorities to shape regulation,* within statutory standards and guidelines, in order to meet changes in banking and economic conditions without repeated, detailed legislative amendment.

". . .

"Subsection (b) complements the purposes set forth in subsection (a). It serves the double function of *giving policy direction to the department and* of *providing legislative standards* that restrict the discretion of the department in keeping with constitutional limits on the delegation of authority to administrative agencies. Basic standards, such as those in this section, which provide guidance for an administrative agency in the performance of its functions have been held to avoid any problem of unlawful delegation of legislative authority. See, e.g. Dauphin Deposit Trust Co. v. Myers, 164 A.2d 86, 388 Pa. 444 1957; Archbishop O'Hara's Appeal, 131 A.2d 587, 389 Pa. 35, 1957; Comm. of Pennsylvania Water and Power Resources Board v. Green Spring Co., 145 A.2d 178, 394 Pa. 1, 1958; Sun Oil Co. v. Zoning Board of Adjustment of City of Pittsburgh, 169 A.2d 294, 403 Pa. 409, 1961; Rieder Appeal, 188 A.2d 756, 410 Pa. 420, 1963.

"§104. Rules of construction

"In the interpretation and construction of this act:

"(a) Use of comments—*The comments of the commission which drafted this act may be consulted in the construction and application of its original provisions* but the text of the act will

control in the event of a conflict between text and comments.

"...

"(d) *Construction of statements of powers of institutions*—A power of an institution stated in this act to be subject to regulation of the department may be exercised, subject to the provisions of this act, in the absence of such regulation but a power which is stated to be subject to approval or permission of the department may not be exercised in the absence of such written approval or permission.

"...

"Comment—Banking Law Commission

"...

"Subsection (a) gives a *statutory basis for referring to the comments of the commission* which drafted this act in the construction of its original provisions, although the text will control the comments in the event of conflict. *Reference to the comments is especially important in determining the intention of this act* with respect to changes in pre-existing law since there is extensive rewriting in this act of provisions of the prior Code, even as to matters which are not intended to be changed in substance. It is intended that the *comments be available for reference not only by courts in the event of litigation* but *also* by *regulatory authorities,* both state and federal, in the conduct of their regulatory and supervisory functions.

"*Subsection (b) gives an 'open-end' effect to most of the statutes and regulations referred to in this act.* The *purpose* of this provision is to *help to keep this act current with changes* in other

laws and regulations without the need for repeated statutory amendments, as was the case under the prior Code. . . .

". . .

". . . . The powers conferred by this act are, accordingly, not dependent on the existence of pertinent regulations *although such regulations when issued will control* the exercise of those powers. . . ." (Emphasis supplied.)

The act delegates to the Department of Banking broad rule-making power and administrative discretion. The avowed intent of the General Assembly is that such regulatory powers be exercised to provide flexibility and responsiveness to changes in economic conditions and banking practices, to effectively serve the convenience and needs of depositors, to create a progressive rather than restrictive banking atmosphere and to adapt itself to changing and expanding requirements of the community.

Should you decide to promulgate such regulations, we call your attention to our prior opinion holding that the type of account generally referred to as a WOA account was permissible under the same provisions of the Banking Code. 1974 Opinions of the Attorney General of Pennsylvania 171 (4 Pa. B. 2052), Official Opinion No. 45.

Insofar as the 14-day withdrawal requirement is concerned, we held:

"It has been suggested that §503(a) means that a savings bank may not pay out money deposited until 14 days after such deposit is made. The commentary to §503 of the Banking Code of 1965 indicates however that §503(a) restates without change that portion of §1203(a) of the Banking

Code of 1933 which provided that a 'savings bank shall not accept any deposits payment of which can be legally required by the depositor within a period of less than 14 days.' Accordingly, it appears that §503(a) obligates a bank to do no more than retain the option of refusing to surrender a deposit sooner than 14 days after it is made. The latter is the interpretation of §503(a) that has been universally adopted by savings banks since the Code of 1965 became effective." Id. at 172, n. 1 (4 Pa. B. 2052, 2053, n. 1).

In accordance with this interpretation, any regulation must require each NOW account draft to contain language which indicates that the bank may require 14 days notice before making payment.

We finally note that should you determine to promulgate regulations to permit this type of account, such a decision would not be completely revoluntionary. Such decisions have been made in other States with various legal results depending on the provisions of particular State statutes. See Hudson County National Bank v. Provident Institution for Savings in New Jersey, 44 N.J. 282, 208 A.2d 409 (1965) (permitting the equivalent of NOW accounts notwithstanding the "traditional" function of saving banks); Saving Bank of Baltimore v. Bank Commissioner of the State of Maryland, 248 Md. 461, 237 A.2d 45 (1968) (permitting NOW accounts); Androscoggin County Savings Bank v. Campbell, 282 A.2d 858 (Me. 1971) (holding that savings banks may not issue checking accounts); New York State Banker's Association v. Albright, 381 N.Y.S. 2d 17 (1975) (savings banks may not offer NOW accounts); Consumers Savings Bank v.

Commissioner of Banks, 282 N.E. 2d 416 (Mass. 1972) (NOW accounts are permissible). Federal law, moreover, does not prohibit NOW accounts, but they may not bear interest except when issued by banking institutions in New England: 12 U.S.C. §1832(a).

In conclusion, we are of the opinion that section 503 of the Banking Code does not prohibit savings banks from issuing NOW accounts and that the broad regulatory authority of your office allows you to decide whether they should be allowed. If you decide to allow them, the Department of Banking should prepare and promulgate regulations which detail the permissible methods of operation of NOW accounts.