## Upper Darby Township Appeal.

348

Argued November 11, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

reargument refused February 8, 1958.

*James A. Lynch,* with him *Paul R. Sand,* for appellant.

*R. Winfield Baile,* with him *James L. Shea,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 8, 1958:

In the year 1912 there rose on a lot at 336 Shadeland Avenue in Drexel Hill, Delaware County, a modest one story office building with a 30-foot front and a 28-foot depth. It was first and throughout its history mostly used as a real estate office, but at different times it lent itself to a dentist, a doctor, a medical laboratory, a sporting goods business organization, and a steel company firm. From 1939 to 1944, because of housing shortage due to the war, it was occupied as a residence. No one has taken the trouble to record what happened to it between 1915 and 1923, but, except for curiosity and historical completeness, the status of its occupancy during those eight years is of no importance in disposing of the legal fence which now surrounds the structure.

On April 5, 1938, the municipality of Upper Darby Township zoned the area in which the building is located as R-1 Residential. At the time of the enactment of the zoning ordinance, the building happened to be vacant and then from 1939 to 1944, as already indicated, the building served as a dwelling. From 1944, when the residential occupancy ceased, until the present litigation began, the Township did not object to the building being used as a medical laboratory, a sporting goods office, and a steel company office.

In July 1952, Associated Contractors, Inc. purchased the building and leased it to the G. & H. Steel Service, Inc., the current occupiers. Before G. & H. took possession, it applied to the Chief Building Inspector of Upper Darby Township for a permit to construct a 5 x 5-foot addition for washroom facilities.

No one objected to the granting of the permit which recorded that the construction operation was in conformity with the zoning ordinance of the Township. The application for the permit specifically stated: "The present building is used as an office building."

Three years later the Township authorities were to deny that the building was an office building. On November 16, 1955, G. & H. made application for a permit to erect in the rear of the building an addition measuring 12 by 30 feet in order to accommodate filing cabinets made necessary because of the firm's expansion of business. The Board of Adjustment rejected the application. The lower court reversed and this appeal followed.

The principal question before us for determination is whether the addition applied for constitutes a normal expansion of a nonconforming use. It is difficult to see how it could be interpreted otherwise. During its whole life of 44 years the little structure in Drexel Hill was never regarded by the Township as anything other than an office building. At the time of the enactment of the ordinance in 1938 it had already been an office building for 26 years. The fortuitous fact that at the very time the zoning restriction went into effect the building was empty did not change its character.

Section 1306 of the Zoning Ordinance provides: "Whenever a nonconforming use of a building or premises has been discontinued or changed into a higher classification or to a conforming use such use shall not thereafter be changed to a use of a lower classification."

The Township thus argues that the Drexel Hill building in 1938 had discontinued its use for office purposes and therefore the present owners have no right to claim a nonconforming use which has disappeared.

But, as we said in *Haller Baking Company's Appeal*, 295 Pa. 257: "The word 'discontinued' here, to have any legal effect, must be the equivalent of 'abandonment,' and, in Corr v. Phila., 212 Pa. 123, where an owner sought to enforce an abandonment of land against a railroad, we held, 'An abandonment of land appropriated by a municipality for public use cannot be established by proof merely of a failure for the time to use it, or of a temporary use of it not inconsistent with an intention to use it for the purpose for which it was taken, or another public purpose."

The record amply justifies the statement by the lower Court that: "There is no evidence of intention to abandon the nonconforming use. No physical changes were made in the building, nor does it appear that its basic character was altered." Neither does the fact that the building was used as a residence during the war years work an abandonment of the original purpose of the structure. A derailed railroad car which is temporarily occupied by wayfarers as a sleeping place does not make it a dwelling.

In rejecting the application for an addition the Board of Adjustment stated: "The use by the applicant at the time it acquired the property and at the present time is a lower use in zoning than the nonconforming use in existence at the time of the adoption of the Ordinance and the nonconforming use in existence at the time the applicant took possession of the property." But the present use of the building by the applicant is not a lower zoning use than the nonconforming use in existence at the time of the adoption of the ordinance. When the ordinance was adopted the building was an office building and it has never been anything else. Placing a sofa and a dining table in an office does not make it a home.

To attempt to draw a distinction, as the appellant does, between a real estate office and a physician's office, a dentist's office and a steel company's office, or a sporting goods company office and a medical laboratory is an academic exercise unleavened by any ascertainment of knowledge helpful in this litigation. Desks, typewriters, filing cabinets, chairs, charts, and the usual paraphernalia of an establishment where administrative and clerical work is performed have been the equipment of this building since 1912, with the exception of the war years. In this connection, the lower Court well said: "An office is an office, and thus the applicant's present use of this building is a use of the same classification as the existing nonconforming use."

The Township itself recognized in the building a nonconforming use in 1952 (14 years after the passage of the ordinance) when it granted the permit to construct the original addition. Even in 1955 the Chief Building Inspector recognized the nonconforming use acknowledged by the lower Court when he wrote on the application the words: "Sent to zoning because it is a nonconforming use." The Township cites as authority for its present position the case of *Williams Appeal,* 174 Pa. Superior Ct. 570, but that case is easily distinguishable from the one at bar. There, the property owner attempted to install the business of manufacturing and repairing industrial machinery on premises which had been used for storing and repairing trucks by a previous owner in his grocery business. The Superior Court said: "It cannot be held that the business of manufacturing and repairing industrial machinery represents 'natural growth' or expansion of a nonconforming use which consisted of storing and repairing trucks belonging to the owner of the land."

The appellant argues that if the requested permit is allowed, the appellees will be in position to employ

ten persons instead of the six now on the staff. But if the nonconforming use was admitted and accepted, which it was, and if normal expansion is recognized in the law, which it is, it is difficult to see where the controlling principle in the case changes anywhere along the line between six employees and ten employees. In *Haller Baking Company's Appeal*, 295 Pa. 257, 261, the owner of a stable sought to use it as a *major* stable (defined as one accommodating more than four horses), but the Board of Adjustment held that unless the stable had been used beyond the capacity of a *minor* stable, that is by five or more horses, continuously, it could not later be so used. We held: "This was an error which the court below promptly corrected. The learned judge of the court below, however, applied the doctrine of actual or substantial use at the date of the adoption of the ordinance, and found that, though the building was a major stable, partly in use at the time the ordinance was adopted, there was no real, substantial use nor regularity of use sufficient to characterize it as an existing use, as it sheltered in a few instances only a team or a horse.

"The ordinance is not so restrictive, nor does it impose such qualifying language. The section of nonconforming uses employs the phrases, 'the lawful use of land existing at the time of the adoption of this ordinance,' 'the lawful use of a building,' etc. Neither the extent, quantity nor quality of the use is mentioned, but only that it must exist. Neither the act, the ordinance nor the law generally requires the court to speculate as to the number of acts or business transactions necessary to constitute an existing use."

So also in the instant case. We cannot speculate as to the number of acts, business transactions or employees which are necessary to constitute the use of premises as an office. Once it is determined, as it has

been determined, that a nonconforming use existed, natural development and growth cannot be paralyzed by an overly-technical appraisement of the existing use. An ordinance which would allow the housing of a baby elephant cannot evict the animal when it has grown up, since it is generally known that a baby elephant eventually becomes a big elephant. The growth of the business here is not an elephantine growth but it is one that can be expected in any community and is usually looked upon with approval, admiration, and even encouragement. If we were to prevent the natural growth and expansion of a protected nonconforming use, we would invade the constitutional guarantees of due process which indeed brought the nonconforming principle into being. Judge Ross of the Superior Court well expressed the principle involved here when he said in *Williams Appeal,* supra, at page 576, that the "natural growth" cases "involve the situation wherein an humble use which existed when a zoning ordinance was adopted is expanded and intensified without modification of its original basic nature."

There was no change in the original basic nature of the use of the Drexel Hill property; there was only a natural expansion of that use. The decree of the Court below is accordingly

Affirmed, with costs on the appellant.