Mignatti Appeal.

Argued January 13, 1961. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Donald A. Gallagher,* with him *James N. Peck,* and *Waters, Cooper & Gallagher,* for appellants.

*James B. Doak,* with him *LaBrum and Doak,* and *Fox, Differ, DiGiacomo & Lowe,* for appellees.

OPINION BY MR. JUSTICE COHEN, March 13, 1961:

Appellees are the owners of a tract of land in Lower Moreland Township, Montgomery County. A quarry and stone crushing plant is operated on this tract as a nonconforming use antedating the township zoning ordinance which zoned this area as a "L" residential area, the highest classification contained in the ordinance.

Appellees sought a special exception from the Board of Adjustment of Lower Moreland Township to permit the erection, maintenance and operation of a bituminous concrete mixing plant in order to mix the stone removed from the quarry with asphalt imported onto the premises.

The Board, after a public hearing, denied the petition, concluding that the operation of a bituminous concrete plant would not constitute an enlargement or expansion of the existing nonconforming use, and would be a use different than what was originally contemplated. Appellees then appealed to the Court of Common Pleas of Montgomery County which court reversed the Board and held that the proposed plant was merely accessory to, and a reasonable expansion of, the existing nonconforming use. The court also held that the proposed use was a change of the same classification as the existing use and therefore per-

missible as a special exception under section 801(2) of the township zoning ordinance. No further testimony having been taken by the lower court, it was their duty (as it is ours) only to determine if the Board committed a manifest abuse of discretion or an error of law. *Kotzin v. Plymouth Twp. Zoning Board of Adjustment,* 395 Pa. 125, 149 A. 2d 116 (1959).

In reversing the action of the board the lower court relied on a similar unappealed case in the Court of Common Pleas of Montgomery County to substantiate their position—(*M&M Stone Company v. Lower Salford Township Zoning Board of Adjustment,* 16 Pa. D. & C. 2d 584 (1958)). The court in that case allowed bituminous concrete to be produced on the premises as an accessory use, relying on *Cheswick Borough v. Bechman,* 352 Pa. 79, 42 A. 2d 60 (1945), where the court held that a rotary screen was reasonably accessory to screen and sift sand and loam which had been extracted from the property.

The Court of Common Pleas of Montgomery County failed to distinguish *Cheswick* from the case before it in either the *M&M Stone* case, supra, or in this case. In *Cheswick,* it was reasonable for this court to find that a rotary screen is not an addition of such magnitude or difference in kind to amount to a change in, or unreasonable expansion of, activities, but a mere expansion depending on an existing use. However, in the present case, the proposed addition encompasses phases and operations actually severable from the industry of quarrying and stone crushing. It represents an additional processing complex, requiring a capital expenditure of $170,000, covering an area roughly ninety by ninety feet and attaining a height of forty-eight feet. The record shows that additional trucks will be necessary for transporting the liquid asphalt to the plant; asphalt storage tanks with a capacity of 10,000 gallons will be erected on the prem-

ises; approximately 500 gallons of fuel oil per day which must also be stored on the premises will be necessary to operate this plant; a 20% increment in the labor force will be necessitated; and an increase of business traffic will necessarily result from the proposed operation. These factors indicate that the bituminous concrete plant would involve the addition not only of new and different chemical and manufacturing processes, but would also create problems of space, storage and traffic heretofore foreign to the existing use. As such, it is severable from the whole as an independent process, and is entirely different from the mere extension provided by the rotary screen in the *Cheswick* case. The former represents a difference in kind; the latter a difference in degree. *Yocom's Appeal,* 142 Pa. Superior Ct. 165, 173, 15 A. 2d 687 (1940).

Hence, the lower court erred in reversing the board and in holding that the proposed use was accessory to, or a reasonable enlargement or extension of, the existing use.

Furthermore, section 801 of the zoning ordinance expressly prohibits use of a building or lot in an industrial district for "asphalt manufacture or refining" or "for any purpose substantially similar thereto." The court below held that this section does not refer to the processes to be employed in the proposed use, but that it is only concerned with the process of refining crude petroleum to asphalt of satisfactory quality.

This conclusion is erroneous. That same lower court in the *M&M Stone* case, supra, referred to "the production of bituminous concrete, commonly known as asphalt." 16 Pa. D. & C. 2d 585. In the very technical meaning of the word, asphalt is the product derived from chemical reduction of crude petroleum, but in the ordinary interpretation of the word, indeed

148

even in appellees' expert witnesses' terms, the product derived from the proposed bituminous mixing plant is called asphalt. Thus, when the ordinance refers to "asphalt manufacture" it is aimed at the common meaning of the word. This conclusion is substantiated further when it is noted that the ordinance outlaws the *manufacturing* as well as the refining of asphalt.

The proposed use, being prohibited as an industrial use, the least restrictive use classification of a zoning ordinance, it cannot be permitted to exist as either an accessory or changed use of a nonconforming use, and the board did not abuse its discretion nor commit an error of law when it so determined.

Order reversed.