## McDevitt v. Warminster Township Zoning Board of Adjustment

*Raymond B. Reinl* and *Robert W. Suter,* for appellant.

*George M. Bush,* for zoning board of adjustment.

GARB, J., January 16, 1970.—In 1961 appellants herein purchased the property in question located and situate in the Township of Warminster, Bucks County, Pa., which property was at that time located, by the terms of the then effective zoning ordinance, in the zoning district classified as "R1-A." Such a zoning classification then permitted the property to be used, inter alia, for the purpose of professional practice of medical doctors, doctors of osteopathy and doctors of dental surgery. Appellants used a substantial portion of the premises for such purpose from 1961 until the present. On December 23, 1963, as a result of an amendment to the zoning ordinance or the enactment of a new ordinance, the property was zoned "R-2" classification, which permitted such use only as an accessory use where the practicing physician or dentist resided on the premises, and the property thereby became nonconforming.[1] In December 1965, appel-

---

[1] We note that a new zoning ordinance was enacted and became effective on December 24, 1967. Counsel agree that this appeal shall be decided by the provisions of the ordinance of December 23, 1963.

lants were granted a zoning permit and building permit allowing certain alterations to the property. Between December 1965 and June 1966, appellants leased a portion of the premises to an office clerical service concern. They were ordered in June 1966 to cease and desist from such additional use which order was affirmed by the zoning board of adjustment. In July 1966, May 1967 and June 1967, appellants requested a special exception or zoning permit in order to use a part of the premises for a business office use in addition to the previous use as doctors' offices. In November 1967, the zoning board of adjustment denied the special exception application and that denial has formed the basis for this appeal. Under section 602 of the zoning ordinance enacted on December 23, 1963, the use of the property as a business or professional office building is an allowable use in "A-O" apartment-office districts.

In their petition for appeal, appellants assert as one reason therefor that they acquired a vested interest in the use of a portion of the premises as a general business office by virtue of the grant of the building permit and their expenditure of certain sums in reliance thereon. Their position, apparently, was based upon the vested interest theory as set forth in Gallagher v. Building Inspector, City of Erie, 432 Pa. 301 (1968). However, at argument, appellants specifically abandoned the vested interest basis for their appeal. Therefore, this issue will not be discussed herein. However, this issue could have some relevancy herein, with respect to the scope of our review, inasmuch as the parties submitted a stipulation which was made a part of the record before this court. The stipulation itself asserted only one fact which was to the effect that a building permit was issued and subsequently appellants spent a sum of money on interior renovation of the premises. Inasmuch as this legal basis for appeal

has been abandoned, we do not consider that this stipulation, itself, constitutes a supplement to the record so as to require that we consider this matter de novo. See Rogalski v. Upper Chichester Township, 406 Pa. 550 (1962), and Cresko Zoning Case, 400 Pa. 467 (1960).

We note further, procedurally, that the zoning ordinance was not made a part of the record by the zoning board of adjustment. At argument, the parties submitted, by agreement, an extract of the zoning ordinance and subsequently agreed by stipulation to the inclusion in the record of the entire zoning ordinance. We do not decide herein whether the addition of the zoning ordinance constitutes a supplement to the record for the purpose of determining our scope of review,[2] because regardless of whether we determine this matter de novo (Rogalski v. Upper Chichester Twp., supra, and Cresko Zoning Case, supra), or upon the record of the zoning board of adjustment only, in which case we determine whether the said board clearly abused its discretion or committed an error of law (Upper Providence Township Appeal, 414 Pa. 46 (1964), Rieder Appeal, 410 Pa. 420 (1963), and Brennen v. Zoning Board of Adjustment, 409 Pa. 376 (1963) ), the result will be the same in either event. There being no evidence in this record that the grant of the special exception would in any way detrimentally affect public health, welfare or morals, appellants, if they qualify under the terms of the zoning ordinance, are entitled to the special exception (Ja-

[2] We recognize that it has been held that the court may not take judicial notice of a zoning ordinance of a township of the second class but make no determination as to whether or not this constitutes the law of this Commonwealth. See Eckert Appeal, 74 York 49 (1960); The First Pennsylvania Banking and Trust Company v. Zoning Board of Adjustment, East Whiteland Township, 15 Chester 151 (1967).

cobi v. Zoning Board of Adjustment, 413 Pa. 286 (1964); Good Fellowship Ambulance Club's Appeal, 406 Pa. 465 (1962)) and we would be disposed to direct the grant of the exception, hearing the case de novo or, in the alternative, find that the zoning board has abused its discretion or committed an error of law in refusing to grant same.

As we view the matter, the question for determination is whether appellants are entitled under this zoning ordinance to a special exception allowing a partial change in their nonconforming use. Section 1201, subsection 1, of the zoning ordinance provides for continuation and extension of a nonconforming use in existence at the time of enactment of the zoning ordinance. The facts are clear that on the effective date of the zoning ordinance, December 23, 1963, the property was used solely as offices for medical practice, not as an accessory use, and not as a general office building. The use as a general office building began in December 1965, two years after the effective date of the ordinance, and, therefore, the latter use cannot qualify as a nonconforming use: Whitpain Township v. Bodine, 372 Pa. 509 (1953); Haller Baking Company's Appeal, 295 Pa. 257 (1929). Clearly, it was not intended that these uses be the same, inasmuch as they were distinctly and separately denominated under section 602 of the zoning ordinance as permissible uses in an "A-O" apartment-office district. In any event, if they are considered the same use, then appellants would have a nonconforming use for both and would be entitled as of right to continue those uses. Therefore, in view of the particular terms of this zoning ordinance, we do not have to decide, as asserted by appellants, that "an office is an office." See Upper Darby Township Appeal, 391 Pa. 347 (1958). See also Mutimer Company v. Wagner, 376 Pa. 575 (1954).

We are satisfied that the resolution of this vexing question is to be found in the very terms of the zoning ordinance itself. Section 1201, subsection 3a, provides as follows:

"When authorized by the Board of Adjustment as a special exception, a non-conforming use of a building or land may be changed to another non-conforming use, provided that:

"(1) The new non-conforming use shall be a permitted use in the zoning district in which the original non-conforming use is listed as a permitted use."

We are not required to make an extended analysis of the zoning ordinance in order to determine whether the proposed new nonconforming use is permitted in the zoning district in which the original nonconforming use is listed as a permitted use, see Munhall Borough Council Appeal, 175 Pa. Superior Ct. 320 (1954) and Williams Appeal, 174 Pa. Superior Ct. 570 (1954), because subsection 2 of section 1201(3) provides that in the event that the original nonconforming use is listed as a permitted use in more than one zoning district, the new nonconforming use shall be one that is permitted in the most restrictive of such zoning districts, and then for this purpose the zoning ordinance lists the various zoning districts from the more to the less restrictive. As previously noted, the use of a property as a general office building is permissible in an "A-O" apartment-office district as is a professional office, not necessarily as an accessory use, and that is the most restrictive district as set forth in section 1201, subsection 3a(2) in which professional offices are allowed. Therefore, we conceive that the narrow question for determination is whether this zoning ordinance permits a *partial* change of a nonconforming use to a use permissible in the same zoning district in which the nonconforming use would be permissible.

We have found no cases directly addressing themselves to this question. However, we have found several cases in this Commonwealth tangentially concerned with this problem and, based upon their holdings, we are satisfied that the limited or partial change is permissible and that, therefore, the special exception must be granted. In Smith v. Westpfahl, 52 D. & C. 51, 46 Lack. 25 (1944), appellant's property constituted a nonconforming use. The general use of the property was then converted into two nonconforming uses each different from the original, one of which was allowable in the zoning district in which the original nonconforming use fell and one which was not. The relevant zoning ordinance there provided for a change of use of a nonconforming property to another use of a similar class. It was held that the use which was previously allowable in the zoning district in which the original nonconforming use fell was permissible but the other use was not. The court construed the words of the ordinance "similar class" in the change of use provision to mean a similar class in a zone in which the original nonconforming use fell. We would construe the holding in this case to be that a nonconforming use can be changed or converted to as many other nonconforming uses as would fall within the same zoning ordinance in that district in which the original nonconforming use was located.

In Jerrahian v. Zoning Board of Adjustment, 10 D. & C. 2d 494 (Philadelphia, 1957), the zoning ordinance provided that a nonconforming use may be changed but not to a use allowable in a district of lower classification. Appellant had a nonconforming use for the storage of motor vehicles. He applied for the right to store building materials in part of the premises and to continue the storage of motor vehicles in another part of the premises. It was held that the application should be granted on the theory that

the storage of building materials was a permissible use in the same zoning district as that which allowed the storage of motor vehicles. The court, apparently, had no difficulty in deciding that a nonconforming use may be divided into more than one nonconforming use after the enactment of the zoning ordinance rendering the original use nonconforming.

In Mignatti v. Lower Moreland Township, 77 Montg. 174 (1960), the property used as a quarry and stone crusher was nonconforming. Appellants applied for a permit to construct an asphalt plant. The zoning ordinance permitted a change of a nonconforming use to one allowable in the same zoning district. The zoning board of adjustment denied the application and appellants appealed. The court reversed the zoning board of adjustment and directed that the permit be allowed, holding that the use of a portion of the premises as an asphalt plant was merely an accessory use to quarrying and stone crushing. Additionally, the lower court held that this was a change of a nonconforming use allowable by the zoning ordinance, thereby deciding by implication that there can be a partial change of a nonconforming use. The lower court was reversed by the Supreme Court in Mignatti Appeal, 403 Pa. 144 (1961), on a holding that an asphalt plant is not an accessory use to a quarry and stone crusher. The Supreme Court further held that the proposed partial use did not constitute an allowable change of a nonconforming use because an asphalt plant was not a permissible use in the same district in which quarrying and stone crushing was allowed. There would seem to be a clear inference from this decision that if the use of the premises as an asphalt plant were a permissible use in the same district in which quarrying and stone crushing were permissible, then the permit should have been allowed.

A contrary holding was entered in Sedlemeyer v. Lower Providence Township, 83 Montg. 178 (1964), in which appellant owned a dwelling house in an industrial zone which was nonconforming. He applied to use part of his premises as a dog kennel in addition to use as a human dwelling. The relevant zoning ordinance provided for a change of nonconforming use to one in a more restricted district only. The permit was denied. It was held by the court that the application was not one for change but one for an additional use.[3] This holding may not necessarily be contra to those set forth above because there is nothing in the opinion to indicate whether a commercial district is more or less restrictive than an industrial district under that zoning ordinance. Furthermore, the court seemed to rely to some extent on the noxious nature of the use of the premises as a dog kennel and, therefore, suggests that perhaps even a total change of nonconforming use would not have been allowed.[4]

We have found only one case in Bucks County even purporting to deal with this question and then only by way of dictum. In Press v. Board of Adjustment, 8 Bucks 320 (1958), the relevant zoning ordinance provided for a change of a nonconforming use to a use permissible in as restricted or more restricted district. The nonconforming use was as a day camp with use as a residential camp by four residential campers. On application, the zoning board of adjustment granted a permit to construct additional improve-

---

[3] Dog kennels were permissible uses in commercial districts but not in industrial districts.

[4] "It is quite clear that the use of a building for human habitation is substantially different from the use of a building for human habitation and as a kennel for dogs. Human beings have many objectionable traits, but among them are not barking in chorus late at night or baying at the moon": Sedlemeyer v. Lower Providence Township, supra, p. 179.

ments to permit a substantial increase in the number of residential campers but imposed various restrictions and conditions upon the permit. The property owners appealed from the restrictions on the permit and it was held by the court that on an application to expand a nonconforming use, where the ordinance permits expansion, the application for a permit is as of right and restrictions and conditions cannot be imposed. On the question of a partial change to a nonconforming use, the court stated, at page 326, as follows:

"Moreover, and again by reason of the express provisions of the ordinance, the nonconforming status of appellants' premises is preserved notwithstanding that the number of boarding campers prior to the zoning regulations was only four in contrast to the thirty-five so accommodated in 1957. Conceding (without so deciding) that this circumstance amounted to a factual change in the nature of the use and that a 'boarding' camp is not legally the same as a 'day' camp, even so appellants still were entitled to their permit as a matter of right. Section 1100(3) provides that a nonconforming use of a building or land may be changed to another nonconforming use of the *same* or more restricted classification. Section 301 (9)(e), as amended by the ordinance of May 29, 1956, places both a 'camp' as well as a 'day camp' in the same class for zoning purposes, i.e. it treats both as equally allowable uses in R-A Rural Districts (if permitted as special exceptions by the board). Hence, by the very terms of the ordinance itself and without any necessity for resort to other considerations, the legislative intention is apparent that the general term 'camp' should be considered in the same class for zoning purposes as the separately specified term 'day camp' ": Press v. Board of Adjustment, supra.

Based upon the foregoing authorities, we are satisfied that a partial change in a nonconforming use is allowable by the terms of the zoning ordinance. This would be consistent with what we consider to be the legislative intent of the change provisions of nonconforming uses. It is apparent that the framers of this ordinance intended that the property rights of one holding a nonconforming use be not in any way changed or prejudiced by virtue of a subsequent enactment of or amendment to the zoning ordinance. Therefore, they provided for a change of nonconforming use to another nonconforming use which is permissible in the same zoning district. Inasmuch as a property owner would be permitted partially to change the use of his property if the partial use is permissible within his zoning district, he should be permitted to make a partial change even after the enactment or amendment of a zoning ordinance so long as he is not permitted to do more than he would have been permitted to do prior to the enactment or amendment of the ordinance. This is consistent with our result herein and, accordingly, we enter the following

## ORDER

And now, to wit, January 16, 1970, it is hereby ordered, directed and decreed that this matter be remanded to the Zoning Board of Adjustment of the Township of Warminster with direction that the special exception be granted.