Miller Co., Inc.'s Zoning Appeal.

Argued February 11, 1971, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS.

214

*William E. Chillas*, with him *Louis S. May* and *May, Grove, Stork & Blakinger*, for appellant.

*Nevin Stetler*, with him *Paul A. Mueller, Jr., Stetler & Gribbin* and *Barley, Snyder, Cooper & Mueller*, for appellee.

OPINION BY JUDGE MANDERINO, September 20, 1971:

This is an appeal from the decision of the Court of Common Pleas of Lancaster County which overruled the decision of the Zoning Board of Adjustment of Lancaster Township denying the application of H. R. Miller Co., Inc. (Miller) to install concrete bases and equipment for a bituminous concrete plant on their present business site. The Court of Common Pleas reversed the Zoning Board and ordered the Zoning Board and its Zoning Officer to issue a permit to Miller. An appeal was taken to the Commonwealth Court pursuant to Section 402 of the Appellate Court Jurisdiction Act of 1970 (Act of July 31, 1970, P. L.    , No. 223, 17 P.S. 211.101 et seq.).

The Zoning Board of Adjustment denied Miller's request because it concluded from the record that the requested use of the property would constitute a new and different nonconforming use than was presently on the site. The Board also concluded that if the requested use were not a new nonconforming use but only the expansion of a prior nonconforming use, the expansion would be in violation of a twenty-five per cent limitation placed on the expansion of nonconforming uses by the Township ordinance. The Board further concluded that traffic problems which would result from a grant of Miller's request would be contrary to the public interest.

The lower court reviewed the record and concluded that the Board erred because the record did not support its conclusions. The lower court found that Miller's request was for the same nonconforming use which had previously existed on the site for many years and that no expansion of the use was involved. We affirm the action of the Court of Common Pleas of Lancaster County.

A similar issue involving this exact site was before the Lancaster County Court of Common Pleas in 1962, in a zoning matter which involved a determination of the nature of the nonconforming use existing on the site. In 1962, the Court held that for over thirty years the site was in continuous use as a stone quarry business, a roadbuilding business, and a retail business for selling quarried mineral products used in making concrete, paving roads, and parking lots.

In this case the lower court came to the same conclusions previously arrived at in the earlier case concerning the site. The lower court found that the businesses which had existed on the property continued to exist, and that the site currently was used for the quarry business, the road building business and the sale of quarried mineral products.

The lower court therefore concluded that the construction of concrete bases and equipment for a bituminous concrete plant did not involve a new use since it was the continuation of a use which had existed on the property and also that no expansion of a use was involved because the exact location on the property where Miller proposed to construct the bases and equipment had been previously used in the businesses on the site.

The record is clear that Miller filed his application for a building permit to meet the demands of a new method of building roads instituted by the Pennsylva-

nia. Department of Highways. Waterbound macadam roads with a base of rolled stone formerly used in the road building business were being replaced by macadam roads which would use bituminous concrete as a base. Both the rolled stone bases and the bituminous concrete bases use, to a significant degree, the same stone. The record also shows that there exists on the site a ready mix concrete plant also utilizing the stone from the quarry business.

We agree that Miller's proposed bituminous concrete plant was not something new and different from the businesses already existing on the land. The site has been and is being used for the road building business, involving the construction of macadam roads and concrete roads. A modification of the operations on the site is necessary for Miller to modernize its business to meet present demands. The only change the granting of a permit will bring about is the production of a different type of road material to build a different type of road. The lower court correctly held that this would not be a new and different use, but simply the modernization of an existing nonconforming use on land already being used in Miller's operations.

We think that the record clearly justifies the lower court's conclusion that Miller does not plan a new use nor does Miller intend to expand an existing nonconforming use. Rather, Miller desires to continue the same nonconforming use but must make certain changes because the ingredients of its product must change as demanded by the market.

We have also examined the record and it does not support the Board's conclusion that increased traffic would adversely affect the public interest. In fact, the record is almost void of any evidence which would support a conclusion that there would be any significant increase in the number of trucks leaving the site daily for road construction destinations.

Lancaster Township relies on *In Re: Mignatti's Appeal,* 403 Pa. 144, 168 A. 2d 567 (1961), to justify its conclusion that the bituminous concrete plant would be a use of the land new and different from any existing there. In *Mignatti,* however, the court decided that a bituminous concrete plant was not a reasonable extension of an existing nonconforming use as a quarry and stone crushing plant. In this case, the record does not sustain a conclusion that the only nonconforming use existing on the property is a quarry and stone crushing plant. There is on the property in addition uses involving the road building business and the preparation of ready mixed concrete. Miller does not plan to start a new business or engage in a new use. Miller desires to continue doing exactly what it has been doing and what a prior owner has done on the property. There has been a change in the market and the consumers now desire a change in the type of product used for exactly the same purpose, road building.

Since the court below took no additional testimony, but reviewed the appeal solely on the record made before the Zoning Board, the function of this court is to determine whether the Board abused its discretion or committed an error of law. *Mulac Appeal,* 418 Pa. 207, 210 A. 2d 275 (1965). We hold that the Board did err in its legal conclusions. The decision of the lower court is affirmed.

---

DISSENTING OPINION BY JUDGE ROGERS:

My brothers here affirm a lower court's reversal of a Zoning Hearing Board's decision that a bituminous concrete plant might not be constructed on appellee's property. They do so by accepting a trial judge's findings that the appellee is engaged in what is denominated "the road building business" and that it operates a ready-mix cement plant. So finding, it concludes that

the bituminius concrete plant would be a part of one or more of these nonconforming activities.

We are compelled to dissent because we can find no evidence in this record that the appellee conducts any business other than that of quarrying and crushing stones and because the Supreme Court has held that a bituminous concrete plant is not accessory to or an enlargement or extension of an existing nonconforming quarry and stone crusher. *Mignatti Appeal*, 403 Pa. 144, 168 A. 2d 567 (1961).

The appellee chose to try its case before the Board by colloquy of its counsel with those present, with fugitive interjections of its chief executive officer. No witnesses were called or examined. This was an adversary proceeding in which the appellee had the burden of showing its entitlement to the permit it sought. Appellee's counsel was either unacquainted with *Mignatti Appeal, supra,* or, apprehensive of it, hoped that the casualism of the proceedings might produce a fortuitous inference, or, in plainer words, that he might luck out.

As for the road building business appellee is found to be engaged in, the lower court admits that the record "does not specifically now show that . . . [the appellee] . . . is engaged in the selling of road materials." The court supplied this evidence by reference to litigation conducted seven years previously in which a judge found that a predecessor of the appellee conducted "a road building business" and by noting that there was no evidence in this record that this business had been discontinued! It thus devised yet another of those exceptions to the rule that the burden of proof rests on the moving party, applicable only in zoning cases and available only *against* municipalities. It was appellee's burden to show what it did on the land and not that of the township to show that appellee had discontinued

doing something a judge found that someone else was doing seven years previously. Furthermore, this writer is unable to ascertain what either the lower court or his brothers in the majority mean by the phrase "the road building business." This record shows that the appellee, as did *Mignatti,* quarries rocks which it crushes to stones suitable for sale for whatever purposes stones have. These activities no more constitute appellee a road builder than did Michelangelo's use of their marble make sculptors of the quarrymen of Carrara.

Neither can we find evidence that the appellee operates a cement plant. At the hearing counsel for the appellee stated on three occasions what *he* thought was the justification for the permit, and we quote: "The other application is for the installation of a bituminous concrete plant which is an extension of and a corollary to a stone quarry operation. . ." and "the installation of a bituminous plant is a part of the operation of the stone quarry" and again "It is part of the quarry operation." Far from showing that the *appellee* operates a cement plant, the record reveals that an entity known as Kurtz Brothers *may* operate such a plant. It further discloses that an individual, H. R. Miller, the litigant hereinbefore mentioned, once owned appellee's quarry and stone crushers and that the appellee corporation, of which Mr. Miller is not a member, purchased the quarry and crushers from him. The trial judge (not the record) informs us that Mr. Miller when he owned the quarry business applied for and by litigation in the county court obtained permission to establish a cement plant as an extension of his quarry operation.[1] The judge tells us that Mr. Miller built this plant; but there is no *evidence* that he did. There

---

[1] This result was reached *after Mignatti Appeal, supra,* held to the apparent **contrary.**

is, however, reference to such a plant in existence at the location. Appellee's counsel, discussing traffic at the Board hearing, remarked: "I might point out that, so far as traffic, the greatest consumer is, of course, the Kurtz Brothers plant which does not require any hauling at all. It is on the location so that hauling is done within the confines of the property and not on the public highway. That is for their concrete plant, you see." If we were required to make findings from this record, we would find, by inference, that Mr. Miller disposed of his cement plant to Kurtz Brothers and the quarry operation to the appellee. If this happened, the appellee will have been permitted its bituminous plant in part at least as a continuation of another's nonconforming use, a novel result indeed.

Lastly, even if the record supported a finding that the appellee operated a cement plant, we could not justify the establishment of the *additional use* of the property as the location of a bituminous concrete plant. As Mr. Justice Benjamin R. JONES wrote in *Hanna v. Board of Adjustment*, 408 Pa. 306, 313, 183 A. 2d 539 (1962):

"This ordinance does not prohibit the expansion or broadening of the scope of the present use. [citing cases].

"The use of the property which the ordinance protects, or 'freezes', is the use which was in existence at the time of the passage of the ordinance or the change of use district (Upper Darby Township's Appeal, 391 Pa. 347, 138 A. 2d 99; Lance Appeal, 399 Pa. 311, 159 A. 2d 715) but it offers no protection to a use *different* from the use in existence when the ordinance was passed. . . . The nonconforming use which is within the orbit of protection of the law and the Constitution is the nonconforming use which exists at the time of the passage of the Zoning ordinance or the change

in a use district under a Zoning ordinance, not a *new* or *different* nonconforming use." (Italics in original). The following have been held to be new or additional uses, not mere accessory or continued or extended nonconforming uses: a gasoline station on a property used as a residence and secondhand car business, *Hanna v. Board of Adjustment, supra;* a beer distributorship in the basement of a grocery store, *Lance Appeal,* 399 Pa. 311, 159 A. 2d 715 (1960); an industrial machinery manufactory and repair shop in a store and repair garage, *Williams Appeal,* 174 Pa. Superior Ct. 570, 102 A. 2d 186 (1954). Similarly, we believe that a plant for the production of bituminous concrete should not be held to be accessory to or a continuation or extension of the nonconforming operation of a cement plant.

