# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

5154 Hamilton South Property, LLC,      :
                Appellant      :
                                        :

                v.                       :      No. 17 C.D. 2024
                                        :

Hamilton Township Zoning Hearing    :      Argued: December 9, 2024
Board, Saylors Lake Fishing               :
Association, and Hamilton Township    :
Board of Supervisors                  :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE MATTHEW S. WOLF, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## ***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                             FILED: July 2, 2025

         5154 Hamilton South Property, LLC (Property Owner) appeals from the December 5, 2023 order of the Court of Common Pleas of Monroe County (trial court), which affirmed the September 6, 2023 decision and order of the Hamilton Township Zoning Hearing Board (Board). In its decision the Board denied Property Owner's requests for rear dimensional setback variances sought as part of its proposal to enlarge a deck attached to the Lakeside Restaurant at Saylors Lake in Hamilton Township (Township). After careful review, we affirm the trial court.

# I. BACKGROUND

Property Owner is the owner of the Lakeside Restaurant (Restaurant) at Saylors Lake in the Township. (Board (Bd.) Finding of Fact (F.F.) No. 2.) Under the Township Zoning Ordinance (Ordinance),[1] the Restaurant is in a C-1 zoning district (C-1 Zone) and is a permitted use. (Bd. Op. at 1.) In 2002, a former owner of the Restaurant applied for a zoning permit to construct a deck between the Restaurant and the Saylors Lake waterline (the "2002 Deck"). The application contained a hand-drawn sketch of the Restaurant and Deck but presented no demarcation of the rear yard zoning setback. Despite this lack of required information, the Township Zoning Officer erroneously issued a permit for construction of the Deck, not realizing that the Deck violated the Ordinance's 20-foot rear yard setback requirement of the C-1 Zone.[2]

Property Owner purchased the Restaurant on July 21, 2021. On September 22, 2022, Property Owner applied to the Board for 3 dimensional rear setback variances from the 20-foot rear yard setback line required for structures in the C-1 Zone. Property Owner sought the variances to enlarge the 2002 Deck. The proposed expansion was to include the following three areas:

> 1. **Dining Area Expansion.** This proposed [D]eck expansion, located directly behind the main [R]estaurant building[,] is 11 feet 8 ¼ inches in depth by 72 feet (+ or -) in length. This [D]eck expansion extends the [2022 Deck] as marked on the plan. The proposed [D]eck expansion encroaches no [farther]

---

[1] Hamilton Township, Monroe County, Pa., Zoning Ordinance (1985).

[2] The 2002 Deck was constructed 26 years after the Township adopted its Ordinance on August 30, 1976. (Bd. F.F. Nos. 8-9.)

onto the rear property line than the existing exterior [D]eck.

2. **Corner Infill Deck.** The second expanded space is designated "corner infill [D]eck" measuring 17 feet in length adjoining the existing walls of the existing exterior dining [D]eck. The "corner infill [D]eck" proposes a curvilinear edge encroaching no closer to the water edge/rear property line than the existing exterior dining [D]eck.

3. **Exterior Dining/Event Deck.** The third and final proposed expanded area is designated measuring 16 feet by 80 feet. To be located between the main parking area and the (area) of Saylors Lake "edge of water."

(Bd. Op. at 1-2.) The proposed expansion of the Restaurant building would extend beyond the rear setback line established by the Ordinance. (Tr. Ct. Op. at 3.)

**A. Proceedings Before the Board**[3]

The Board addressed Property Owner's request for variances during three meetings held on January 26, 2023, March 14, 2023, and April 17, 2023. On April 17, 2023, Property Owner amended its application so that, among other things, the application depicted the rear setback line. (Bd. F.F. No. 14.) The amended plan reduced the depth of the 72-foot southern addition to 5 feet, 5/8 inches, which would become part of the indoor dining area. This addition would

---

[3] The Township exercised its right to be a party to the proceeding pursuant to Section 908(3) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10908(3). In addition, a couple who own property contiguous to and overlooking the Property also requested and were granted party status in the proceeding, (Bd. F.F. No. 4), as was the Saylors Lake Fishing Association (SLFA).

be entirely in violation of the 20-foot rear setback line of the Ordinance. (Tr. Ct. Op. at 4.)

Property Owner contended before the Board that the Restaurant was a non-conforming structure which could be expanded in compliance with Article VII of the Ordinance governing "Non-Conforming Lots, Uses and Structures." (Bd. F.F. No 7.) Article VII of the Ordinance provides rules that apply to lots, uses, or structures that existed lawfully "before the effective date of adoption of the Ordinance" in 1976 or in the case of a non-conforming structure is "legally established by the [] Board through the granting of a variance." (Property Owner's Reproduced Record (R.R.) at 221a.) Property Owner stated that "the proposed extensions of [preexisting] non-conforming setback lines are necessary for the continued reasonable use of the [P]roperty and within the guidelines [of] *Article VII applicable to non-conforming structures.*" (emphasis in original) (Bd. Op. at 2.)

After the conclusion of the hearings, the Board issued an opinion determining that a plain reading of the definition of the term "non-conforming structure" set forth in Section 201.4 of the Ordinance demonstrated that Article VII of the Ordinance does not apply to this matter. (Bd. Conclusion of Law Nos. 10-14.) Section 201.4 defines a non-conforming structure, in pertinent part, as:

> Non-Conforming Structure: A building or structure which does not conform to the zoning district regulations in Schedule II and which is legally existing at the time of enactment of this Ordinance. . . ."

(Original Record (O.R.) at 675.)

4

The Board also relied upon Section 704 of the Ordinance in determining that the Property did not qualify as a "non-conforming structure."[4] It provides, in pertinent part:

> Section 704: <u>Non-conforming Structure</u>
> A non-conforming structure is any building or structure which does not conform to the zoning district regulations established in Schedule II, and which is legally existing at the time of enactment of this Ordinance or is legally established by the []Board through the granting of a variance.

(R.R. at 221a.) The Board explained that because the 2002 Deck was first constructed in 2002, well after the August 30, 1976 date of adoption of the Ordinance, it did not meet the Ordinance definitions of a non-conforming structure. Therefore, Article VII of the Ordinance provision, upon which Property Owner relies, is not relevant to its variance requests. (Bd. Conclusion of Law Nos. 10-14.)

During the hearings, the Township advised the Board that the Township erroneously issued a permit for the original construction of the 2002 Deck and that the Township would not contest the legality of the original Deck because the Deck was constructed in reliance on the erroneously issued 2002 permit. The Township also informed the Board that it would not contest an application by Property Owner to obtain a variance by estoppel or by collateral estoppel with regard to the existing 2002 Deck because the Township would be estopped from contending that the 2002 Deck is an illegal structure. (Bd. Op. at 8-11.)[5]

---

[4] It is unclear why the Ordinance appears to have two different definitions of the term "Non-conforming Structure."

[5] The Board explained that "[v]ariance by estoppel, applies when a property owner, or someone with an interest in property, has maintained a use of property contrary to the zoning laws **(Footnote continued on next page…)**

5

The Board noted in its opinion:

> To establish a prima facie variance by estoppel, the property owner has the burden to prove:
> (1)    the municipality's failure to enforce the ordinance for a long time;
> (2)    [] the municipality knew, or should have known, of the illegal use and "actively acquiesced" in the illegal use;
> (3)    reliance by the owner on the appearance of regularity that the municipality's inaction has created;
> (4)    hardship created by cessation of the illegal use; and
> (5)    [] the variance will not be a threat to the health, safety and morals of the community.

> *Springfield Township v. Kim*, 792 A.2d 717, 721 (Pa. Cmwlth. 2002). *Also see Tri-County Landfill v. Pine Township Zoning Hearing Board*, 83 A.3d 408 (Pa. Cmwlth. 2014).

(Bd. Op. at 9, n.1.)

The Board held that Property Owner's variance application must be evaluated solely as a standard application for rear yard setback dimensional variances governed by Section 802.2 of the Ordinance. (R.R. at 226a-27a.) This Section grants the Board the power to authorize variances from the terms of the Ordinance where enforcement of the literal provisions of the Ordinance would result in particular difficulty or unnecessary hardship. (R.R. at 224a.) (Bd. Op. at 15.)

The Board next analyzed Property Owner's claim that it would suffer hardship if the dimensional variance was not granted. The Board relied upon the

---

for a long period of time. As the term suggests, the theory provides protection for uses that are contrary to the zoning law, but in which the municipality has acquiesced." (Bd. Op. at 9, n.1.)

6

following requirements of Section 802.2 establishing the principal elements that an applicant must prove to establish it qualifies for a dimensional variance:

1.    Proof that the existence of exceptionally irregular, narrow, shallow, steep lots or other exceptional topographic or physical conditions exist and that strict application of the Ordinance would deprive the owner or owners of the reasonable use of the land or buildings involved but in no other case.

2.    Section 802.2(a) prohibits the Board from granting a variance unless the Board finds all of the following:

(1)    That there are special circumstances or physical conditions, . . . applicable to such land, structure, or buildings and which are not applicable in general to other lands, structures, or buildings in the same district or area.

(2)    That such special circumstances or physical conditions have not resulted from any act of the applicant subsequent to the adoption of the Ordinance, whether in violation of the provisions hereof or not, and that such special circumstances or physical conditions are such that the strict application of the provisions of this Ordinance would deprive the applicant of the reasonable use of the land, structure, or buildings.

(3)    That for reasons fully set forth in the findings of the [] Board, the granting of the variance or variances is necessary for the reasonable use of the land, building or

7

structure, and that the variance or variances as granted by the [] Board is the minimum variance that will accomplish this purpose.

(4)    That the granting of the variance, under such conditions as the [] Board may be deemed necessary or desirable, will be in harmony with the general purpose and intent of this Ordinance, and will not be injurious to the neighborhood or otherwise detrimental to the public welfare.

(5)    That any variance granted by the [] Board shall be subject to such conditions as will assure that the adjustment thereby authorized shall not constitute a grant of special privilege which is not consistent with the limitations upon other properties in the vicinity and district in which the land, building or structure in question is situated.

(R.R. at 224a-25a.)  In addition, Section 802.2(c) expressly states: "In no case shall a variance be granted solely for reasons of additional financial gain on the part of the Applicant."  (R.R. at 225a.)

On the issue of hardship, the Board noted that Property Owner's representative had testified that its desire to construct the proposed enlargements of the 2002 Deck was "[t]o give more usable space to the [P]roperty, of course to make a couple of dollars . . . ."  (Bd. F.F. No. 40.)  When Property Owner's witness was asked why the Property could not simply remain in its current state, the witness indicated that it wished to be able "to hold an event at the same time that the Restaurant may be open as well."  (Bd. F.F. at No. 41.)

8

After evaluating Property Owner's variance request based on the testimony before the Board and the requirements of Section 802.1, the Board found that Property Owner had failed to meet its burden to show it was entitled to the requested dimensional variances.[6]  (Bd. F.F. No. 47.)  The Board found that Property Owner had not proven the requisite hardship because "[m]ere economic hardship will not of itself justify a grant of a variance."  (Bd. Op. at 19-20.)  In addition, the Board found that Section 802.2 was not satisfied because Property Owner is currently enjoying the reasonable use of the Property, the requested variance is not the minimum variance necessary to afford Property Owner the reasonable use of his land and building, and the hardship created by the size of the proposed enlargements is created by Property Owner and not by topographical conditions.  In addition, the Board found that Property Owner did not present any evidence that its business would become economically nonviable if the variances were not approved.  (Bd. Op. at 30-34.)

On June 6, 2023, the Board issued an order denying Property Owner's requested variances.  On July 6, 2023, Property Owner timely appealed to the trial court.

## B. Proceedings Before the Trial Court

On appeal, the trial court did not take additional evidence but instead relied upon the Board's findings of fact and conclusions of law.  Before the trial Court, Property Owner argued that the Board erred in concluding that the 2002 Deck was not a non-conforming structure which could be enlarged pursuant to Section

---

[6] The Board noted that while neither the original application nor the amended application asserted that Property Owner was seeking to rely on the *de minimis* variance doctrine, this doctrine was raised by Property Owner for the first time in its Post-Hearing Memorandum of Law in Support of Dimensional Variances.  The Board found that because the issue was not pled by Property Owner nor addressed by any witness before the Board, this issue was waived.  (Bd. Op. at 17.)

9

703.1. (Tr. Ct. Op. at 9.) In addition, Property Owner argued that the 2002 Deck is a non-conforming structure because the Township granted the Restaurant's previous owner a permit to build the original Deck in 2002 in violation of the Ordinance's required rear setback. Property Owner noted that the Township had explained during the Board Hearing that the 2002 Deck had received a variance by estoppel. Therefore, Property Owner asserted that the clause of Section 704's definition of a non-conforming structure which stated that it included property "which is legally established by the [] [Board] through the granting of a variance," the word "variance" was meant to refer to a variance by estoppel as well as a variance granted by the Board. (Tr. Ct. Op. at 9.)

The trial court rejected this argument, stating that neither the Restaurant's previous owner nor Property Owner ever applied to the Board for a variance, that the Board never considered a variance application, and that it did not grant a variance. *Id*. Thus, the trial court found that the 2002 Deck did not qualify as a "non-conforming structure" under the definition of that term in Section 704. *Id.*

Next, Property Owner asserted the Board erred when it found that the proposed expansion would increase the degree of non-conformity or create new non-conformities under the Ordinance. (Property Owner's Br. at 10.) The trial court disagreed and held that the Board had correctly found that if the variances were granted "[a] new incursion over the rear setback line for 152 feet would increase the degree of non-conformity and would create new non-conformities." (Tr. Ct. Op. at 11.)

Finally, Property Owner argued that the Board erred in restricting the possible expansion of its non-conforming structure to 50% of the preexisting non-conforming area of the 2002 Deck. (Property Owner's Br. at 7.) The trial court held that it was not necessary to decide this issue because Property Owner was asserting the right "to expand a non-conforming structure operated by a permitted use to

10

create an additional violation of the rear setback line." *Id.* In this case, however, the structure had been found not to be a non-conforming structure. (Tr. Ct. Op. at 10.)

On December 5, 2023, the trial court affirmed the Board's decision that Property Owner had not met the necessary requirements of the Ordinance to qualify for the variances it sought and denied the appeal. (Tr. Ct. Op. at 15.)

## II. DISCUSSION

Where, as here, the trial court did not take any additional evidence, appellate review of the decision of a zoning hearing board is limited to determining whether the Board abused its discretion or committed legal error. *Township of Exeter v. Zoning Hearing Board of Exeter Township,*, 962 A.2d 653, 659 (Pa. 2009). An abuse of discretion occurs when a zoning hearing board's findings are not supported by substantial evidence in the record. *Id.* Substantial evidence is that relevant evidence which a reasonable mind would accept as adequate to support the conclusion reached. *Id.* However, the court may not substitute its interpretation of the evidence for that of the Board. *Tidd v. Lower Saucon Township Zoning Hearing Board*, 118 A.3d 1, 8 (Pa. Cmwlth. 2015). It is the Board's function to weigh the evidence before it and it is the sole judge of the credibility of witnesses and the weight afforded their testimony. *Id.* The appellate court must view the evidence in a light most favorable to the prevailing party, which must be given the benefit of all reasonable inferences arising from the evidence. *Id.* However, with respect to questions of law, our standard of review is *de novo* and our scope of review is plenary. *See City of Clairton v. Zoning Hearing Board*, 246 A.3d 896 n.8 (Pa. Cmwlth. 2021).

Generally, a Board's interpretation of its own zoning ordinance is entitled to great weight and deference. *City of Hope v. Sadsbury Township Zoning Hearing Board*, 890 A.2d 1137, 1143 (Pa. Cmwlth. 2006). However, it is

11

fundamental that ordinances are to be construed expansively, such that the landowner is afforded the broadest possible use and enjoyment of his or her land. *River's Edge Funeral Chapel & Crematory, Inc. v. Zoning Hearing Board of Tullytown Borough,* 150 A.3d 132, 139 (Pa. Cmwlth. 2016).

### A. Article VII of the Ordinance

Property Owner raises three issues on appeal. First, Property Owner asserts that the trial court erred by failing to recognize the 2002 Deck as a non-conforming structure because it is a structure "legally established by the [ ] Board through the granting of a variance." Property owner then cites the Board's Conclusion of Law No. 12 stating that "[t]he 2002 [D]eck is now a 'lawful' structure by operation of the variance by estoppel/collateral estoppel doctrines and by the admission of the Township that it will not contest the construction of the 2002 [D]eck." (Property Owner's Br. at 9.) Thus, Property Owner argues the trial court erred in concluding that the 2002 Deck was not a non-conforming structure because the Deck did not exist at the time of adoption of the Township's Ordinance on August 30, 1976. *Id.* at 10.

In response, the Board contends that this argument was not raised before the Board and therefore should be deemed waived. (Bd's Br. at 12.) We agree. and find it waived. *See Harrisburg Gardens, Inc. v. Susquehanna Township Zoning Hearing Board*, 981 A.2d 405, 415 (Pa. Cmwlth. 2009) (holding that "a party who fails to raise an issue before a municipal zoning hearing board is precluded from doing so for the first time on appeal"); *see also Weiler v. Stroud Township Zoning Hearing Board*, 300 A.3d 1121, 1131 n.4 (Pa. Cmwlth. 2023). The fact that

the Township granted Property Owner a variance by estoppel appears to have come to light during the Board's hearings.[7]

Property Owner's second argument is that the trial court erred in concluding that any expansion of the dining room or decking within the 20-foot rear setback line increased the degree of non-conformity in violation of Section 704.1 of the Ordinance. (Property Owner's Br. at 20.) Because we found Property Owner's argument regarding a variance by estoppel has been waived, we agree with the conclusion of both the Board and the trial court that the Restaurant is not a non-conforming structure under the Ordinance, (Bd. Conclusion of Law No. 10), and therefore, that Section 704.1 of the Ordinance does not apply to Property Owner's variance request. (Bd. Conclusion of Law Nos. 13 & 15; Tr. Ct. Op. at 9.)[8]

Finally, Property Owner argues that the Board erred in denying that Property Owner had the right under Section 703.1 of the Ordinance to enlarge its

---

[7] Because the Board and the Township permitted the Deck to be built, *i.e.*, essentially granted a variance, at the time it was non-conforming, the Board found it was a lawful structure by operation of a variance by estoppel. While this appears to be the case, because we find the issue to have been waived, it does not have any bearing on the issue before us which is whether Property Owner has now established entitlement to construct an extension of the Deck.

[8] On this issue, we note that the trial court determined that:

> Even if [Property Owner's] interpretation of its status as the holder of a variance under Article VII was correct, it still would not be entitled to expand the building across the rear setback line. Section 704.1 of the Ordinance states that a non-conforming structure may be enlarged, but only if the addition 'does not increase the degree of nonconformity or create new non-conformities' under the [O]rdinance.

(Tr. Ct. Op. at 9.)

13

non-conforming structure up to 50% of the existing improved land or floor area.[9] (Property Owner's Br. at 22.) As noted previously, the Board found that Section 703.1 did not apply to Property Owner's requested variances because the 2002 Deck did not qualify as a non-conforming structure under the Ordinance. (Bd. Conclusion of Law No. 10.)

We agree with the trial court's conclusion that the Board correctly denied Property Owner's variance requests under Section 703.1.[10] For the reasons discussed above, we find that Article VII of the Ordinance, which includes Section 703.1, does not apply to Property Owner's variance requests because the variance by estoppel argument has been waived. Like the Board, we find that Property Owner's

---

[9] Section 703.1 of the Ordinance provides in pertinent part:

703.1 Enlargement

A . . . non-conforming structure or building shall not be enlarged or extended in excess of fifty (50) percent of the existing improved land or floor area . . . . Such enlargement or extension shall not exceed the maximum height or maximum building coverage requirements established in Schedule II for the zoning district in which the non-conforming use is located. . . . .

(R.R. at 221a.)

[10] In addition, as noted by the trial court, the Board found that Property Owner had not proven the extent of the area that the non-conforming 2002 Deck encroached over the rear setback line, which is a necessary fact to establish when determining whether the expansion will be larger than the 50% of the existing improved land or floor area allowed by Article VII of the Ordinance. (Tr. Ct. Op. at 14.) (citing Bd. Conclusion of Law No. 22.) The trial court also rejected Property Owner's argument on this issue because it concluded that Property Owner "is not allowed to expand a non-conforming structure operated by a permitted use to create an additional violation of the rear setback line." (Tr. Ct. Op) (citing *Rennerdale Volunteer Fire Department v. Zoning Hearing Board of Collier Township*, 496 A.2d 431, 434 (Pa. Cmwlth. 1985)).

14

variance request must be evaluated under Section 802 of the Ordinance as a request for standard dimensional rear setback variances.[11]

## B. Article VIII of the Ordinance

Because the Board found that Sections 703 and 704 of the Ordinance do not apply to Property Owner's variance requests, (Bd. Conclusion of Law No. 10), the Board evaluated Property Owner's application for variances as standard requests for dimensional setback variances governed by Section 802.1 of the Ordinance. (Bd. Op. at 15.) Upon completing its analysis, it found that Property Owner had failed to prove the elements required to establish an entitlement to the requested dimensional variances. *Id.* Specifically, the Board determined that Property Owner had failed to prove:

(a) the unique physical conditions of the property impose an unnecessary hardship on the [a]pplicant;

(b) unique conditions exist that justify the grant of a variance;

(c) the property cannot be developed in strict conformity with the [o]rdinance requirements;

(d) the variances requested are necessary to enable the applicant to reasonably use the property;

(e) the hardship has not been created by the [a]pplicant;

(f) the variances requested will not alter the essential character of the neighborhood; [and]

(g) the variances requested represent the minimum variances that will afford relief.

---

[11] We note that even if the 2002 Deck had been found to be a "non-conforming structure," Section 704.1 of the Ordinance provides that in the event the area of non-conformity is any area other than a failure to meet the minimum front setback requirements, then "the owner must take such action as is required before the Board as provided in Article VIII." (R.R. at 222a.)

15

(Bd. Conclusion of Law No. 47.)

Because we agree that Property Owner has not proven that it is entitled to its requested variances pursuant to Article VII of the Ordinance, we now evaluate its requests pursuant to Section 802.2 of the Ordinance.

We begin our analysis by noting that a variance applicant's burden is a heavy one, and a variance should be granted sparingly and only under exceptional circumstances. *Teazers, Inc. v. Zoning Board of Adjustment of Philadelphia*, 682 A.2d 856, 859 (Pa. Cmwlth. 1996). The factors a property owner must establish in order to qualify for a dimensional variance are set forth in the statute. "Our courts have synthesized the necessary factors into a three-part test in which the variance applicant must show: 1) unique circumstances or conditions of a property that would result in an unnecessary hardship; 2) no adverse effect on the public welfare; and 3) the requested variance would afford relief with the least modification possible." *Lawrenceville Stakeholders v. City of Pittsburgh Zoning Board of Adjustment*, 247 A.3d 465, 473 (Pa. Cmwlth. 2021) (citations omitted).

Where, as here, we are faced with a request for dimensional variances as opposed to a use variance, our Supreme Court has set forth a more relaxed standard for granting a variance requiring a lower quantum of proof. "When seeking a dimensional variance within a permitted use, the owner is asking only for a reasonable adjustment of the zoning regulations in order to utilize the property in a manner consistent with applicable regulations." *Hertzberg v. Zoning Board of Adjustment of City of Pittsburgh*, 721 A.2d 43, 47 (Pa. 1998).

Under this relaxed standard, when considering the element of unnecessary hardship, "[c]ourts may consider multiple factors, including the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the

zoning requirements[,] and the characteristics of the surrounding neighborhood." *Hertzberg,* 721 A.2d at 50. The requisite economic hardship can be shown by "demonstrating either that physical characteristics of the property are such that the property cannot be used for the permitted purpose or can only be conformed to such purpose at a prohibitive expense, or that the property has either no value or only a distress value for any permitted purpose." *Bernotas v. Zoning Hearing Board of City of Bethlehem*, 68 A.3d 1042, 1049 (Pa. Cmwlth. 2013).

While *Hertzberg* eased the requirements for dimensional variances somewhat, those requirements remain. *Tidd*, 118 A.3d at 8. An applicant for a variance must still present evidence establishing each of the conditions listed in the zoning ordinance. *Id.* The burden on the applicant remains heavy and an applicant "must demonstrate something more than a mere desire to develop a property as it wishes or that it will be financially burdened if the variance is not granted." *Singer v. Philadelphia Zoning Board of Adjustment*, 29 A.3d 144, 150 (Pa. Cmwlth. 2011).

The Board and the Township assert that the Board correctly denied each of the dimensional variances requested because Property Owner did not meet its burden to demonstrate that a hardship, unique to the Property, prevents the reasonable use of the Property in conformity with the Ordinance. They argue that the Property is currently being operated successfully without the requested variance. We agree. "Where no hardship is shown, or where the asserted hardship amounts to a landowner's desire to increase profitability or maximize development potential, the necessary hardship criterion required to obtain a variance is not satisfied even under the relaxed standard set forth in *Hertzberg*." *Dunn v. Middletown Township Zoning Hearing Board*, 143 A.3d 494, 501 (Pa. Cmwlth. 2016).

Here, Property Owner did not present evidence or testimony demonstrating that the allegedly unique physical characteristics of the Property limit its ability to develop the Property in conformity with the Ordinance. (Bd.

17

Conclusion of Law No. 52.) Rather, Property Owner's representative asserted that the Property cannot be developed as it wishes, in a manner that will maximize the economic potential of the Property without the dimensional variances it seeks. (Bd. Conclusion of Law No. 54.) Before the Board, Property Owner's representative testified that its desire to construct the proposed improvements to the Restaurant was "[t]o give more usable space to the [P]roperty, of course to make a couple of dollars, . . . ." (Bd. F.F. No. 40.) When Property Owner's Representative was asked whether there was any way Property Owner could construct the proposed decks and still honor the 20-foot setback, he testified:

> A. I don't think so. Not and achieve what [it] want[s] to, no.
>
> Q. What is it [it] want[s] to achieve?
>
> A. [T]o give a more serviceable area and separate event space for like, weddings and stuff outside. . .
>
> Q. Why is it important for [Property Owner] to do this work?
>
> A. Well, generate more income but it'll you know—it'll keep the building alive for another 50 or 100 years. . . . .
>
> Q. Why can't it continue on just as it is?
>
> A. It needs to grow. The world is not getting any cheaper and some of the space is – like I said, the outside [D]eck and stuff will be specialized to hopefully be able to hold an event at the same time that the {R]estaurant may be open as well.

(Bd. F.F. No. 41.)

The Board heard Property Owner's testimony at the Board's hearings and concluded that its primary reason for requesting the rear yard setback variances

18

at issue was to enlarge the Restaurant to accommodate additional business and to make its business more profitable. The Board, as the factfinder, is tasked with making determinations of credibility. We note that "[t]he credibility of witnesses and the weight to be accorded to witness testimony are matters for the Board in its capacity as [factfinder]." *See, e.g., Hawk v. City of Pittsburgh Zoning Board of Adjustment*, 38 A.3d 1061, 1065 (Pa. Cmwlth. 2012).

Based on the analysis above, we find the Board did not err in concluding that Property Owner has not proven that it is entitled to its requested variances under Article VII of the Ordinance or under Section 802.1 of the Ordinance.

### III. CONCLUSION

In sum, we conclude that Property Owner has not met the requirements set forth in the Ordinance to demonstrate entitlement to the variances that it seeks. Accordingly, we affirm the December 5, 2023 decision and order of the trial court.

_____
PATRICIA A. McCULLOUGH, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

5154 Hamilton South Property, LLC,   :
               Appellant   :
  :
        v.   :   No. 17 C.D. 2024
  :
Hamilton Township Zoning Hearing   :
Board, Saylors Lake Fishing   :
Association, and Hamilton Township   :
Board of Supervisors   :

## *ORDER*

       AND NOW, this 2nd day of July, 2025, the December 5, 2023 Order of the Court of Common Pleas of Monroe County is AFFIRMED.

                          _____

                          PATRICIA A. McCULLOUGH, Judge